**Armando VELASQUEZ, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 13–90–365–CR.**

Court of Appeals of Texas,
Corpus Christi.

Aug. 29, 1991.

James R. Lawerence, Corpus Christi, for appellant.

Grant Jones, Jim Rosenkild, Corpus Christi, for appellee.

Before SEERDEN, KENNEDY, and HINOJOSA, JJ.

## OPINION

SEERDEN, Justice.

Appellant Armando Velasquez was found guilty by a jury of the murder of Guadalupe Guartuche. The trial court assessed punishment at 45 years confinement. Appellant brings three points of error on appeal. We affirm.

Velasquez, Guartuche, and several others in a small group had been in a garage drinking beer and sniffing paint on the night of the murder, sometime in late 1987 or early 1988. Velasquez and Guartuche then began to argue and fight about an earlier traffic accident in which Velasquez' sister had been killed. Others in the group broke up the fight, but Guartuche, as he left the garage, threatened to bring back some of his friends to help him in the fight. Velasquez then stated that he intended to shoot Guartuche, and he obtained a pistol from another member of the group. Velasquez and the group then drove around looking for Guartuche. When Velasquez saw him walking along a nearby street, he forced Guartuche into the car and told him that he was going to kill him, and the group then drove to a remote area.

There, after exiting the vehicle, Velasquez and Guartuche continued to argue, with Velasquez telling Guartuche that he was going to kill him and Guartuche pleading with Velasquez not to kill him. Guartuche reached for something from his boot and/or moved toward Velasquez with something in his hand that appeared to be a knife. Velasquez then pulled out the pistol, Guartuche started to back away, and Velasquez shot him. Velasquez then dragged Guartuche's body into some nearby brush and left it there. A year and a half later, in October of 1989, a passerby discovered a skull and certain of Guartuche's personal belongings in a brushy area where the shooting had occurred.

By his first point of error, appellant complains that he established self-defense as a matter of law. The Texas Court of Criminal Appeals recently addressed the allocation of burdens when the defendant raises self-defense. Accordingly, the State has the burden of *persuasion* in disproving the evidence of self defense. That is not a burden of *production*, i.e., one which requires the State to affirmatively produce evidence refuting the self-defense claim, but rather a burden requiring the State to prove its case beyond a reasonable doubt. *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim.App.1991); Tex.Penal Code Ann. § 2.03 (Vernon 1974). In resolving the sufficiency of the evidence issue, we look not to whether the State presented evidence which refuted appellant's self-defense testimony, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of murder beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 914.

In the present case, the only evidence to show self-defense was that Guartuche may have reached for something from his boot and/or moved toward Velasquez with something in his hand resembling a knife, just before Velasquez shot him. However, evidence that Velasquez abducted Guartuche, told him that he was going to kill him and drove him to a remote location with the stated intention of shooting him, that Velasquez did not know what Guartuche had in his hands, if anything, immediately before the shooting, and that Guartuche was backing away from Velasquez at the time he was shot, all tend to support the elements of murder and to negate Velasquez's claim of self-defense. Viewing all the evidence in the light most favorable to the verdict, a rational trier of fact could have found the essential elements of murder and disbelieved Velasquez's claim of self defense beyond a reasonable doubt. Appellant's first point of error is overruled.

By his second point of error, appellant complains that the trial court erred in overruling his motion for instructed verdict on the ground that the evidence was insufficient to prove the corpus delicti. Specifically, appellant complains that the evidence was insufficient to show either that Guartuche was ever actually hit by Velasquez' shot and died from it, or that the skull found later belonged to Guartuche.

 Initially we note that a challenge to a judge's ruling on a motion for instructed verdict is in actuality merely a challenge to the sufficiency of the evidence to support the conviction. *Madden v. State*, 799 S.W.2d 683, 686 (Tex.Crim.App.1990); *Zule v. State*, 802 S.W.2d 28, 32 n. 3 (Tex.App.—Corpus Christi 1990, pet. ref'd). Moreover, the fact that a defendant chooses to put on evidence after the State has rested and the court has overruled his motion for instructed verdict, no longer waives the defendant's underlying challenge to the sufficiency of the evidence. *Madden*, 799 S.W.2d at 686 n. 3. Rather, by putting on a defense, the defendant merely expands the amount of evidence that may be viewed by the court in making a determination concerning sufficiency. *Id.*

 In reviewing the sufficiency of the evidence, an appellate court looks at all the evidence in the light most favorable to the verdict or judgment and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim. App.1989); *Houston v. State*, 663 S.W.2d 455 (Tex.Crim.App.1984). Specifically, the corpus delicti of murder consists of two elements: first, the body of the deceased must be found and identified; second, the death of the deceased must be shown to have been caused by the criminal act of another. *Harris v. State*, 738 S.W.2d 207, 220 (Tex.Crim.App.1986). The corpus delicti may be proved by circumstantial as well as direct evidence, and all facts and circumstances in the case may be looked to in aid of and to determine the corpus delicti. *Id.* at 220.

 In the present case, the evidence suggests that immediately after being shot, Guartuche fell down and was in an obviously unconscious condition in which Velasquez was able to drag his body into the surrounding brush without resistance. At that same location, decomposed human remains were later found with a bullet hole in the skull, along with certain personal belongings of Guartuche, a shirt and a religious medal, as identified by his wife. Under these circumstances, a rational trier of fact could have found beyond a reasonable doubt that Guartuche was in fact fatally shot in the head by Velasquez and died on the spot, to be found later alongside items he had worn at the time of the shooting. We hold that there was sufficient evidence to prove the corpus delicti. Appellant's second point of error is overruled.

By his third point of error, appellant complains that the trial court erred in allowing the jury to question witnesses. The trial court initially announced to the jury panel during voir dire that it would accept written questions from them to be asked of the witnesses.

 Velasquez complains specifically about jury questions asked to State's witness Alfredo Grande, Jr., a member of the group that witnessed the shooting. As with other witnesses at trial, while Grande was testifying, the trial court, along with the attorneys, reviewed questions submitted by the jury. The defendant's attorney objected generally to any question submitted by the jury. The trial court, however, asked several of these questions to the witness, including what Guartuche's physical size was, how he got to the garage, and where he went after he left the garage. Grande answered that Guartuche was of medium build, that he left the garage to get his friends, and that Grande did not know how Guartuche had gotten to the garage. The trial court then gave the attorneys an opportunity to examine the witness based on the answers to these questions, but neither side had any further questions.

Appellant complains that there is no authority in Texas that would allow the jury

to question a witness on the stand during a criminal trial. We point out, however, that in the present case, the jurors did not themselves ask the questions. Rather, they merely submitted proposed questions to the trial judge, who reviewed the questions, decided whether or not they were proper, and then himself asked the witness certain questions.

Until recently, this practice had been virtually unknown in Texas and its legitimacy is uncertain. *Cf. Carr v. State*, 475 S.W.2d 755, 757 (Tex.Crim.App.1972) (legitimacy of juror questions was raised but not addressed because the point of error was multifarious and presented nothing for review). Within the last six months, however, the Houston Fourteenth Court of Appeals in two separate opinions has found nothing inherently improper about a trial judge soliciting written questions from the jury to be reviewed and then asked by the trial judge to a witness. *Allen v. State*, 807 S.W.2d 639 (Tex.App.—Houston [14th Dist.] 1991, pet. granted); *Buchanan v. State*, 807 S.W.2d 644 (Tex.App.—Houston [14th Dist.] 1991, pet. granted). Noting that this practice has been generally allowed in other states, the Houston court concluded that it is also consistent with the rule in Texas that the manner of examining a witness is a matter within the discretion of the trial court. *Allen*, 807 S.W.2d at 641; *Buchanan*, 807 S.W.2d at 645; Tex. R.Crim.Evid. 610(a).

█ We agree with the Houston court's analysis. In addition, we note that it has been well-established in Texas for many years that the trial judge himself may ask questions of a witness in order to clarify an issue or to obtain a clearer idea of the merits of the case, as long as the judge maintains an impartial attitude when addressing such questions. *Brewer v. State*, 572 S.W.2d 719, 721 (Tex.Crim.App.1978); *Munoz v. State*, 485 S.W.2d 782, 784 (Tex. Crim.App.1972); *Burks v. State*, 693 S.W.2d 747, 750 (Tex.App.—Houston [14th Dist.] 1985, pet. ref'd); *Silva v. State*, 635 S.W.2d 775, 778 (Tex.App.—Corpus Christi 1982, pet. ref'd). Under the practice which the Houston court and this Court now sanc-

tion, the trial judge retains discretion to analyze, control and actually ask the questions propounded by the jury. By submitting written questions, the jury merely suggests how a witness may clarify those areas on which the jury, as the ultimate factfinder, remains uncertain or unclear.

█ Finally, even if the manner by which the trial court solicited and asked questions from jurors were found to be error, any such error was harmless. *See Harris v. State*, 790 S.W.2d 568, 584–88 (Tex.Crim.App.1989); Tex.R.App.P. 81(b)(2). The questions actually asked and complained about in the present case were not otherwise objected to as improper, and the answers were not prejudicial, inflammatory or particularly relevant to the material issues involved. In short, we find nothing in the questions and answers to suggest that a rational trier of fact might have reached a different result if they had not been asked. *Harris*, 790 S.W.2d at 588. We conclude beyond a reasonable doubt that any such error made no contribution to the conviction or to the punishment. Tex. R.App.P. 81(b)(2). Appellant's third point of error is overruled.

The judgment of the trial court is AFFIRMED.