Rene Escamilla **DELGADO**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 13–91–194–CR.

Court of Appeals of Texas,
Corpus Christi.

Aug. 31, 1992.

**596**

Larry Warner, Harlingen, for appellant.

Luis V. Saenz, County Atty., Crim. Dist., John A. Olson, Asst. County Atty., Brownsville, for the State.

Before NYE, C.J., and SEERDEN and GILBERTO, HINOJOSA, JJ.

## OPINION

NYE, Chief Justice.

A jury found appellant guilty of murder and sentenced him to twenty years in prison. Appellant brings twenty-one points of error. We affirm the trial court's judgment.

The victim, Clinton McCarley, was found dead in his apartment in Harlingen. His son, Clint McCarley, Jr., testified that the same afternoon he was at the apartment complex, outside, when he saw a Hispanic male leaving in his father's car. This vehicle caught his attention because the driver was going at an unusually high rate of speed. McCarley stated that the man in the car was wearing a white or grey t-shirt, and he had a mustache and a unique haircut, much like appellant's. McCarley could not positively identify appellant as the car's driver because of the distance.

Police encountered appellant several days later. He voluntarily accompanied them to the police station to answer questions. After police gave him *Miranda* warnings, appellant made a statement denying involvement in the crime. Later that same afternoon, a different officer questioned appellant and obtained a second statement in which appellant admitted killing McCarley. According to appellant's confession, he had sexual relations with the victim the morning of the incident. After intercourse, the victim told appellant that he preferred younger men. Appellant became angry. Grabbing what he thought was a lamp, appellant struck the victim on the head and he fell to the floor. Appellant placed the victim half-on, half-off the couch, picked up a vacuum cleaner, and struck the victim on the head repeatedly. He took the victim's wallet and car keys and left the scene in the victim's car. He abandoned the car in a field outside Harlingen.

By point five, appellant complains that his confession was tainted by an illegal arrest. Nowhere in appellant's pretrial motion to suppress, the suppression hearing, or trial did he object that he was illegally arrested. Since the point was not raised below, it has been waived. *Fancher v. State,* 659 S.W.2d 836, 839–40 (Tex.Crim. App.1983); *Niehouse v. State,* 761 S.W.2d 491, 494 (Tex.App.—Dallas 1988, no pet.).

By his sixteenth point, appellant complains that the trial court erred in failing to make findings of fact and conclusions of law on the voluntariness of appellant's written confession. We abated the appeal and ordered the trial court to submit findings. The court has done so, thereby curing the error.

We now address appellant's seventeenth point, in which he claims the trial court erred by admitting the written confession because it was involuntary. The trial court conducted a hearing on the admissibility of appellant's confession out of the jury's presence. *See* TEX.CODE CRIM. PROC.ANN. art. 38.22, § 6 (Vernon 1979).

At a hearing on the voluntariness of a confession, the trial court is the trier of fact and the exclusive judge of the witnesses' credibility and of the weight to give their testimony. *Nance v. State*, 807 S.W.2d 855, 866 (Tex.App.—Corpus Christi 1991, pet. ref'd). The trial judge determines voluntariness from the totality of the circumstances. *Gonzales v. State*, 807 S.W.2d 830, 832–33 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd). Here, the trial court found that Officer Muniz read appellant his rights several times and that appellant understood them. Appellant never sought to exercise any of those rights. Moreover, no credible evidence supported any allegation that police obtained the confession by threats or coercion or at a time when appellant was intoxicated, ill, or incompetent. The record supports no claim that the trial court abused its discretion in finding that the confession was voluntary. We overrule point seventeen.

■ By point fifteen, appellant claims that the trial court erred when it submitted a copy of State's Exhibit 25 (appellant's confession) to the jury. After the jury retired, the prosecutor asked to substitute a clean copy of the confession for the one in evidence. She explained that during trial she underlined a sentence in the court's copy of the confession. She stated that she whited-out the marks she made, xeroxed the document, and wished to submit the clean copy. The copy was in every way identical to the court's original copy, except for the absence of underlinings. Over appellant's objection, the trial court allowed the substitution. The Rules of Criminal Evidence state that a duplicate is admissible to the same extent as an original unless a question is raised regarding the authenticity of the original or if, under the circumstances, it would be unfair to admit the duplicate in lieu of the original. Tex. R.Crim.Evid. 1003. Since appellant made no argument or presented any proof of unfairness, nor did he raise an issue of authenticity or accuracy, we find no error in the trial court's ruling. *See Acosta v. State*, 752 S.W.2d 706, 709 (Tex.App.—Corpus Christi 1988, pet. ref'd); *Maixner v.*

*State*, 757 S.W.2d 21, 24 (Tex.App.—Beaumont, 1988, no pet.).

■ By point eighteen, appellant argues that the trial court erred in admitting one of the oral statements he made to police. The point is overruled because appellant failed to preserve error. At trial, appellant claimed that the statement was inadmissible hearsay. On appeal, he claims that admission of the oral statement violated article 38.22 of the Texas Code of Criminal Procedure. The argument at trial differs from the complaint raised on appeal. Therefore, it has been waived. *Thomas v. State*, 723 S.W.2d 696, 700 (Tex.Crim.App. 1986); *Baldonado v. State*, 745 S.W.2d 491, 496 (Tex.App.—Corpus Christi 1988, pet. ref'd).

By point twenty, appellant complains that the trial court erred in allowing Officer Flores to recite an oral statement made by appellant. Flores testified that he was on patrol when he encountered appellant riding his bike. Flores contacted his superior by radio. His superior suggested that Flores ask appellant if he was willing to accompany Flores to the police station for questioning. Appellant agreed to go and got into Flores's squad car. On the way, appellant asked Flores "what this was all about." Flores answered that he did not know. Appellant responded, "I bet'cha it's about that guy that was killed in those apartments." Flores answered, "I don't know, I can't say. Please don't say anything to me."

Article 38.22 of the Code of Criminal Procedure prohibits the admission of any oral statement the accused makes as a result of custodial interrogation, unless the statement is recorded and preceded by Miranda warnings. The State introduced no recording of appellant's statement. Flores testified that he did not give appellant Miranda warnings before appellant made the statement. The issue presented by this point of error is whether appellant's statement resulted from custodial questioning, therefore rendering it inadmissible. *See Shiflet v. State*, 732 S.W.2d 622, 623 (Tex. Crim.App.1985). In order for the statement to be admissible under article 38.22,

we must find that appellant was not in custody and that his oral admission was given freely, voluntarily, and without compulsion or persuasion. *Shiflet*, 732 S.W.2d at 623.

Both the United States Supreme Court and the Texas Court of Criminal Appeals still utilize the concepts of "custody" and "focus" in analyzing admissibility of oral confessions or statements against interest. The focus concept emphasizes the officer's thoughts—his intentions in questioning the suspect, whether he believed he had probable cause to act, and the point in time at which such probable cause developed. *Shiflet*, 732 S.W.2d at 624. Flores testified that the police investigation had not "focused" on appellant. Flores knew of the homicide, but did not at that point have any reason to suspect appellant.

If the custody concept is used, the inquiry is on the suspect and whether a reasonable person would believe that he was being deprived of his freedom in a significant way. *Shiflet*, 732 S.W.2d at 624. The record is devoid of any evidence on appellant's belief regarding the status of his freedom. Even so, "no court has yet accepted the subjective view of the suspect as determinative of the issue of custody." *Shiflet*, 732 S.W.2d at 624. The record does show that Flores asked appellant to accompany him to the station for questioning, and appellant agreed. Flores stated that he did not question appellant in any way. Flores's testimony shows that appellant's statement was not the product of questioning, but followed a question appellant put to Officer Flores. *Rathmell v. State*, 653 S.W.2d 498, 500–501 (Tex.App.—Corpus Christi 1983, pet. ref'd); *Shiflet v. State*, 653 S.W.2d 830, 834 (Tex.App.—Corpus Christi 1982), *aff'd*, 732 S.W.2d 622 (Tex.Crim.App.1985). The trial court did not err by allowing Flores to testify to appellant's voluntary oral statement. Point twenty is overruled.

By point two, appellant again claims that the trial court erred in admitting one of his oral statements. Officer Muniz testified that he typed a copy of appellant's confession and read it back to him. Muniz stated that after appellant signed it, appellant said that he "felt relieved." Appellant argues that the oral statement was inadmissible because it did not contain assertions of fact which were found to be true, and it did not conduce to establish his guilt. *See* TEX.CODE CRIM.PROC.ANN. art. 38.22 (Vernon 198). Defense counsel elicited the oral statement that appellant "felt relieved" when counsel cross-examined Muniz on the voluntariness of the written confession. Counsel did not object to Muniz's recitation of the oral statement. Muniz repeated the same testimony later in response to a question from the prosecutor. Appellant's attorney then objected on grounds that the statement that appellant "felt relieved" was an inadmissible oral confession. Since the oral statement was already in evidence when counsel finally thought to object, appellant waived his complaint. *Mayfield v. State*, 803 S.W.2d 859, 864 (Tex.App.—Corpus Christi 1991, no pet.). Point two is overruled.

By his first and seventh points of error, appellant claims that the trial court erred in denying his motions for instructed verdict. Appellant moved for an instructed verdict at the close of the State's evidence, and again at the close of all the evidence, on grounds that the State failed to prove that he killed McCarley. More specifically, appellant argues the State did not prove the manner and means of death beyond a reasonable doubt. A challenge to a ruling on a motion for directed verdict is in actuality merely a challenge to the sufficiency of the evidence to support the conviction. *Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim.App.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2912, 115 L.Ed.2d 1076 (1991); *Velasquez v. State*, 815 S.W.2d 842, 845 (Tex.App.—Corpus Christi 1991, no pet.); *Zule v. State*, 802 S.W.2d 28, 32 n. 3 (Tex. App.—Corpus Christi 1990, pet. ref'd). In reviewing the sufficiency of the evidence, we look at all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Mad-*

*den,* 799 S.W.2d at 686; *Velasquez,* 815 S.W.2d at 845.

In its indictment, the State alleged that appellant "knowingly caused the death of [the victim] by striking [him] on the head with a blunt instrument, to wit, a vacuum cleaner." Appellant claims that the instrument causing death could have been a lamp. Photographs of the apartment showed that a lamp stood near the couch where the victim lay. Appellant's statement indicated that he thought he initially struck the victim with a lamp. However, neither the State nor appellant adduced any evidence that a blow from an object like the lamp caused death.

Appellant's counsel cross-examined the coroner on the cause of death, attempting to show that the victim had a heart condition and actually died from a heart attack. Margueritte Dewitt performed the victim's autopsy. She testified that she knew the victim had a bad heart. Consequently, during the autopsy, she looked carefully for evidence of a recent heart attack. She found none. DeWitt believed that the fatal wound was a skull fracture. She testified that the victim had unusual head injuries. DeWitt's opinion was that a heavy, blunt instrument with a relatively sharp edge would have caused those injuries. When shown the vacuum cleaner in question, DeWitt stated that it could indeed have been the object that caused death. Although appellant's confession stated he struck McCarley with a lamp first, there was no evidence that this first blow caused his death.

Ofelio Muniz, an investigating officer, was one of the first policemen to arrive at the victim's apartment. He testified that the room contained both a lamp and a vacuum cleaner. Muniz found blood and hair on the vacuum cleaner. Pieces of plastic matching the plastic on the vacuum cleaner were imbedded in the victim's head. Other than the vacuum cleaner, no other objects in the room were made of plastic that matched that bits found in the victim's head. Appellant's lamp and heart attack theories created a fact question for the jury on the actual cause of death. The trial court did not err in denying appellant's motions for instructed verdict.

Moreover, viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have found beyond a reasonable doubt that appellant killed McCarley, and he used a vacuum cleaner to do so. McCarley's son testified that he had seen a man leaving the apartment complex in his father's car that day. The man, who had a unique haircut like appellant's, drove at a high rate of speed. McCarley's son described the man's manner of dress, and his description corroborated statements in appellant's confession. The record contains sufficient evidence that a vacuum cleaner was the instrument used to kill McCarley. Points one and seven are overruled.

■ By point three, appellant argues that the State did not bring sufficient evidence to corroborate his confession. Appellant gave police two statements—one denying any wrongdoing, the other confessing to the murder. In addition to saying that he felt relieved after making the confession (*see* point two, *supra*), appellant told police where he abandoned the victim's car. Officer Muniz testified that police already knew where the car was when appellant told him its location. Appellant contends that his knowledge of the car's location was not sufficient to corroborate his admission of murder.

■ An accused's confession, standing alone, is not enough to convict. The State must bring independent evidence to establish the corpus delicti of the crime. *Jackson v. State,* 652 S.W.2d 415, 419 (Tex. Crim.App.1983); *Firo v. State,* 654 S.W.2d 503, 505 (Tex.App.—Corpus Christi 1983), *aff'd,* 657 S.W.2d 141, 142 (Tex.Crim.App. 1983). Two elements comprise the corpus delicti of murder: the body of the victim must be found and identified, and death must be shown to have been caused by the criminal act of another. *Baldree v. State,* 784 S.W.2d 676, 687 (Tex.Crim.App.1989), *cert. denied,* 495 U.S. 940, 110 S.Ct. 2193, 109 L.Ed.2d 521 (1990); *Velasquez,* 815 S.W.2d at 845. Here, the victim's body was found in his apartment by his son.

The evidence showed that the body was half-on, half-off the couch, consistent with statements in appellant's confession. Ms. DeWitt, the pathologist, testified that a blow to the victim's head by a heavy blunt instrument, wielded with significant force, caused McCarley's death. That blunt instrument could have been a vacuum cleaner. In her autopsy, DeWitt also observed bruises on the victim's forearms. She called these "defensive bruises." They form when the victim raises his arms to defend himself against attack. We agree with appellant that the evidence concerning the location of the victim's car, and the fact that appellant knew that location, does not necessarily establish his guilt. However, additional evidence of the victim's identity, the appearance of the murder scene, and the medical testimony about the cause of death all corroborate appellant's confession and are sufficient to establish the corpus delicti of murder and to sustain the judgment of guilt. We overrule point three.

By point four, appellant claims that the State improperly attacked his attorney by intimating that counsel had engaged in some trick or device at trial. In questioning appellant, the prosecutor stated:

Q: Do you remember the suppression hearing that we had here today?

A: What's a suppression hearing, ma'am?

Q: That was the day that your defense counsel was attempting to hide the confession from the jury.

Appellant objected, moved to strike, and requested a mistrial. The Court ordered the prosecutor's remark stricken and instructed the jury to disregard it, but denied a mistrial. The prosecutor herself apologized to the jury and requested them to disregard her statement. We do not make light of the impropriety of the prosecutor's remark. However, appellant's confession was already before the jury. The instruction to disregard was promptly given, as was the prosecutor's own apology. An instruction to disregard generally cures errors emanating from improper comments. *See generally Borrego v. State*, 800 S.W.2d 373, 377 (Tex.App.—Corpus Christi 1990, pet. ref'd). We find that the instruction to disregard cured any error. Point four is overruled.

By point six, appellant contends that the trial court erred in admitting a videotape of the murder scene because the probative value was substantially outweighed by its prejudicial effect. Appellant argues that the video was extremely prejudicial and proved only that the apartment was bloody, a fact already established by testimony and by photographs. We disagree with appellant's argument. We analyze appellant's claim of prejudice considering the factors announced by our Court of Criminal Appeals in *Long v. State*, 823 S.W.2d 259, 272 (Tex.Crim.App.1991) and *Goodwin v. State*, 799 S.W.2d 719, 739 (Tex.Crim.App.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2913, 115 L.Ed.2d 1076 (1991). The factors to be considered are the number of exhibits offered, their gruesomeness, their detail, their size, whether they are black and white or color, whether they are close-up, whether the body is naked or clothed. Rule 403 requires that the evidence have *some* probative value and that its probative value must not be substantially outweighed by its inflammatory nature. *Long*, 823 S.W.2d at 272.

The trial court admitted State's exhibits 2 through 24. These exhibits were photographs depicting the victim in his bloodspattered apartment, blood-stained objects in the apartment, and autopsy photos. Appellant does not contest the admission of any of these photographs. Later, the State introduced a videotape of the apartment. The trial court admitted the videotape and allowed the jury to view it. The tape runs for approximately ten minutes. It is in color. It shows the scene as found by investigating police, with the victim's body still present, clothed, and positioned half-on, half-off the couch. The victim appears to be clutching a metal implement, apparently a part from the vacuum cleaner, which appears in pieces next to the couch. The film also affords generous views of blood stains on the floor and couch, accompanied with the filming officer's explana-

tions. Two videotapes are stacked on the television set, but the titles are indecipherable.[1]

Details such as the pieces of the vacuum cleaner and the videotapes on the television were visible only in the video and not in the still photographs. Thus, the video possesses probative value independent of the photographs. It tends to corroborate appellant's statement that the two men watched videos that morning. Indeed, the video is gruesome, but only slightly more so than the photographs. We do not think a contemporary jury would find the video so emotive that it would govern their deliberations. *Virts v. State*, 664 S.W.2d 772, 775 (Tex.App.—Corpus Christi 1983, no pet.). The details unique to the video tended to corroborate appellant's confession and witness testimony regarding the violence of the killing. We cannot say the video's probative value was substantially outweighed by its prejudicial effect. *Goodwin*, 799 S.W.2d at 739; *Villegas v. State*, 791 S.W.2d 226, 237 (Tex.App.—Corpus Christi 1990, pet. ref'd). *Virts*, 664 S.W.2d at 775. We overrule point six.

By point twenty-one, appellant claims that the trial court erred in admitting the videotape because the State did not lay a proper predicate. The appellant argued at trial that the State did not authenticate the videotape because the prosecutor failed to establish a complete link in the chain of custody. Here appellant claims that the State did not show that the video camera was in proper working order. We overrule the point because the trial objection does not comport with the theory raised on appeal. *Harris v. State*, 790 S.W.2d 568, 580, 581 (Tex.Crim.App.1989); *Baldonado v. State*, 745 S.W.2d at 496; *see also Wagner v. State*, 720 S.W.2d 827, 829 (Tex.App.—Texarkana 1986, pet. ref'd) (an objection that no proper predicate was laid is too general for consideration on appeal).

By point eight, appellant complains that the prosecutor encouraged the jury to speculate on the testimony of a "phantom witness." The appellant testified at trial. He claimed he was not in the area when the murder was committed and that the police and the other witnesses against him were all lying. The prosecutor stated:

Q: What would you say if a witness came and said that he saw you ...? What would you do if I told you right now that a witness would come here to testify that he saw you on the porch on September 1, 1990, waiting for Mr. McCarley, Sr.?

Defense counsel did not object. Appellant now complains that the prosecutor's statements present fundamental error and relies on *Berryhill v. State*, 501 S.W.2d 86, 87 (Tex.Crim.App.1973). In *Berryhill*, the Court of Criminal Appeals reversed and remanded the cause based upon a number of factors. The prosecutor questioned the defendant on certain preparation activities he and a friend had engaged in before a robbery. The defendant denied all the prosecutor's allegations that he preplanned any robbery. In closing argument, the prosecutor directly alluded to the cross-examination. He then told the jury that he could not say how he obtained the preparation evidence, but he invited them to speculate on those matters since he was precluded from bringing them before the jury. The Court of Criminal Appeals held that the State's reference to the cross-examination, the statement that those matters could not be brought out, along with the invitation to speculate on those matters constituted an improper representation that other incriminating evidence existed which could not be presented. The Court concluded that "argument injecting matters not in evidence is clearly improper; argument inviting speculation is even more dangerous." *Berryhill*, 501 S.W.2d 86, 87.

In *Berryhill*, defense counsel preserved error. In the case at bar, the prosecutor

---

1. Appellant's confession to police states that appellant went to the victim's apartment that morning. The two watched pornographic videos and then had sexual intercourse. The victim then took appellant home, but appellant returned later. He and the victim watched more videos and once more engaged in intercourse. The victim rejected appellant, and appellant attacked him.

made the statement during the presentation of evidence, not in closing argument. The statement appellant complains of here was isolated. The prosecutor made no further reference to any such witness at trial or in closing argument. Moreover, in light of the entire cross-examination, the prosecutor directed the statement towards appellant and his propensity for truth and veracity, rather than suggesting to the jury that other incriminating evidence existed which could not be introduced. The statement here was not so manifestly improper that it could not have been cured by an instruction to disregard. *Mowbray v. State*, 788 S.W.2d 658, 671 (Tex.App.—Corpus Christi 1990, pet. ref'd), *cert. denied*, —— U.S. ——, 111 S.Ct. 999, 112 L.Ed.2d 1082 (1991). We overrule point eight.

By point nineteen, appellant maintains that the trial court erred in allowing lay testimony on the cause of death. Officer Muniz described the murder scene as he originally found it. Over appellant's objection, Muniz stated that he thought the victim died from being struck over the head with the vacuum cleaner. The error here, if any, is harmless. Ms. DeWitt testified that a blow from the vacuum cleaner was the cause of death. Although defense counsel tried to show that a heart attack caused death, counsel conceded the causation issue in closing argument. He abandoned the heart attack theory when he stated that appellant did not murder the victim, "but somebody did." He further suggested that somebody was not in court. Point nineteen is overruled.

By points nine and ten, appellant complains of improper jury argument. By point nine, he complains that the prosecutor accused appellant and his family of lying on the witness stand. Final argument is proper if it is confined to the following four areas: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Mowbray*, 788 S.W.2d at 664. The prosecutor argued, "What did the defendant and his family have to gain from lying?" Appellant objected that the state-

ment was an "improper remark," and that the "jury determines the credibility of the witnesses." The prosecutor's statements were indeed strong and direct. However, we do not find them improper. Defense counsel invited the argument when he developed his theory in closing that the police first investigated the crime and then molded appellant into the role as perpetrator with half-truths and convenient omissions of certain evidence. Appellant's own statements from the stand that the police and the State's witnesses "were all liars" also invited the prosecutor's strong language when she pointed out opposition between appellant's testimony and the State's evidence. Counsel is afforded wide latitude in drawing inferences from the evidence so long as they are fair, legitimate, and offered in good faith. *Mowbray*, 788 S.W.2d at 664. The argument was a reasonable deduction from the evidence, which showed that the appellant's testimony directly contradicted testimony of the State's witnesses. We overrule points nine and ten.

Similarly, by point twelve, appellant claims the prosecutor gave unsworn testimony during closing argument. The prosecutor stated that she felt sorry for appellant's mother and that she knew that a mother would lie in court to save her son from prison. Appellant's mother testified only briefly. She stated that appellant was a slow learner, attended special education when he was young, and was subject to sudden collapses. She testified that, as a child, appellant had always tried to behave as his parents directed. The prosecutor did not cross-examine appellant's mother. As such, she was never impeached. It was undisputed that appellant was hospitalized for a heart condition the day he gave his confession to police. Thus, nothing in the evidence suggests that appellant's mother gave untruthful testimony. However, once again, we find that the prosecutor's argument was invited by appellant's claim that the police's evidence was contrived and that the State's witnesses all lied. Although the trial judge overruled appellant's objection to this portion of the prosecutor's argument, he instructed the jury to remem-

ber the evidence. We presume that the instruction to the jury cured any error. Moreover, we are convinced beyond a reasonable doubt that the error did not contribute to the jury's verdict. The mother's testimony did not directly relate to the murder incident itself. It indirectly corroborated the undisputed evidence that appellant was hospitalized at some time after he gave his confession to police. Point twelve is overruled.

 By point eleven, appellant claims fundamental error occurred when the prosecutor's argument challenged the jury to convict the appellant merely because he was a homosexual. The prosecutor stated, "Can he not admit that he is a homosexual?" Appellant cites other statements in the closing argument which focus on appellant's failure to admit homosexuality. In argument, appellant's counsel himself invited the jury to speculate on why the State tried to show appellant was a homosexual. Counsel then reiterated that appellant denied being a homosexual and challenged the sufficiency of the State's evidence to prove appellant was a homosexual. In examining the prosecutor's argument as a whole, we do not agree with appellant's attempt to color the statements as an appeal to convict appellant merely on the basis of his sexual preference. The prosecutor used her argument to emphasize the State's theory of the case. Throughout trial, the State claimed that appellant committed the murder because he and the victim were homosexual lovers, and the two had a violent fight. The State's witnesses testified, based on personal experience, that appellant was a homosexual. Appellant flatly contradicted those witnesses. During argument, the prosecutor questioned appellant's credibility and cited specific instances when he had been impeached. The statements at issue attacked appellant's truthfulness as a witness. In fact, she prefaced the comments by saying, "Who cares if he is a homosexual? We care whether he killed Clint McCarley or not. But more than that is how much of a truth-teller he is." We find that the argument was invited and was a proper response to appellant's argument. *See Hino-*

*josa v. State,* 788 S.W.2d 594, 597 (Tex. App.—Corpus Christi 1990, pet. ref'd); *Tejerina v. State,* 786 S.W.2d 508, 522 (Tex. App.—Corpus Christi 1990, pet. ref'd). Point eleven is overruled.

By points thirteen and fourteen appellant further urges fundamental error presented by improper jury argument. These points do nothing more than reurge contentions already raised in points nine, ten, and eleven. We overrule all of the foregoing points.

After carefully considering appellant's arguments, we find no reversible error. The trial court's judgment is AFFIRMED.