NUMBER 13-99-077-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


____________________________________________________________________


MAURO MIRELEZ, Appellant,


v.



THE STATE OF TEXAS, Appellee.

____________________________________________________________________


On appeal from the 28th District Court of Nueces County,

Texas.

____________________________________________________________________


O P I N I O N



Before Justices Dorsey, Yañez and Seerden(1) 


Opinion by Justice Yañez


 Appellant, Mauro Mirelez, challenges the revocation of his
community supervision. We modify the judgment of the trial court and
affirm as modified.

Background

 In 1994, appellant was indicted on a charge of aggravated sexual
assault of a child. Appellant pleaded guilty to indecency with a child as
part of a plea bargain. A judgment was entered sentencing appellant
to ten years confinement in the Texas Department of Criminal Justice,
Institutional Division (TDCJ-ID), with imposition of confinement
suspended and the appellant placed on community supervision for a
period of ten years. 

 On February 6, 1998, the State filed a motion to revoke community
supervision, alleging that appellant: (1) had failed to report to his
probation officer from April 1997 to December 1997; (2) had failed to
pay the restitution fee; and (3) had failed to pay the probation fee. A
hearing was held on the State's motion to revoke on February 2, 1999. 


 At the hearing, appellant pleaded true to all of the allegations
made in the State's motion to revoke. The State relied on appellant's
pleas of true and recommended that community supervision be revoked
and appellant be confined in the TDCJ-ID. The State then rested, and
appellant testified on his own behalf. 

 Appellant stated that he left the State of Texas to go to Wyoming
because one of his victims, a nephew who was now a teenager, was
threatening appellant's life. According to appellant, he kept in contact
with his community supervision officer. Appellant testified that he was
eventually arrested in Wyoming on a bench warrant issued in Texas. 
Appellant stated that, although his life was still in jeopardy, he was
willing to stay in Texas, on probation, and face the consequences. 
Appellant also described health problems he was having, including
heart problems. On cross-examination, appellant testified that he had
victimized three other nephews, all of whom now live in Wyoming. He
admitted that he had never told his probation officer about any threats,
had not been given permission to leave Texas, and refused to return
when directed to do so by his probation officer. After appellant was
cross-examined, the defense rested and the court requested arguments
from both sides.

 Appellant argued that, in light of his poor health and honest desire
to conduct himself within the requirements of his probation, he should
be given a sanction, such as jail time, rather than revocation. The court
then directed some questions to appellant's community supervision
officer, who was at the hearing but had not been placed under oath and
had not been called as a witness. Appellant also asked questions of the
community supervision officer. The community supervision officer
stated that, until moving to Wyoming, appellant had been complying
with the terms of his probation. The officer also stated that there had
been problems with threats from the nephew.

 The court initially stated that it would sanction appellant by
extending community supervision for eighteen months; however, the
State argued that this option was not open to the court. The
community supervision officer stated that the trial court could extend
community supervision for ten years as a sanction. Appellant argued
for a sanction of 180 days in jail, which would have amounted to the
time served by appellant prior to the hearing. At the close of the
hearing, the court stated that it found that appellant had violated
community supervision, and it was going to sentence appellant to ten
years in the TDCJ-ID. On February 11, 1999, the trial judge signed a
"judgment adjudicating guilt," in which appellant was sentenced to ten
years confinement in the TDCJ-ID, with imposition of confinement
suspended and appellant placed on community supervision for a period
of ten years.

 Appellant challenges the trial court's judgment, arguing that: (1)
the trial court erred by questioning the community supervision officer;
(2) the trial court erred in revoking community supervision by relying on
unsworn testimony; (3) the voluntariness of appellant's pleas of true
was undermined by the trial court's asking questions; (4) appellant was
denied effective assistance of counsel at the revocation hearing; and (5)
the trial court's written judgment should be modified to reflect the oral
pronouncement of sentence. The State, in its reply brief, argues that
this Court should modify the trial court's judgment. 

The Trial Court's Questions

 Appellant contends that, by questioning the probation officer, the
trial court assumed the role of advocate for the State. A trial judge may
ask questions of a witness to seek information or clarify a point, as long
as the judge maintains an impartial attitude when addressing such
questions. Brewer v. State, 572 S.W.2d 719, 721 (Tex. Crim. App.
1978); Velasquez v. State, 815 S.W.2d 842, 846 (Tex. App.--Corpus
Christi 1991, no pet.); Silva v. State, 635 S.W.2d 775, 778 (Tex. App.--Corpus Christi 1982, pet. ref'd). 

 The questions of which appellant complains were directed by the
trial court towards appellant and his probation officer, after appellant
had pleaded true to the allegations in the motion to revoke. Most of the
questions consist of efforts to clarify that appellant did leave the State
of Texas and was absent for approximately a year. Appellant makes
much of a question by the trial court concerning appellant's contact
with his former victims who live in Wyoming. This question also was
an attempt to clarify and was impartial. The State had asked whether
appellant returned "to the same home of the children [appellant]
molested" in Wyoming. Appellant admitted that he had, but that they
were all adults now. The court then asked if the victims were over the
age of eighteen. Appellant confirmed that they were, and further stated
that they no longer live in the house, as all of them have their own
families. The court was only seeking to clarify appellant's statement
that the victims are all now adults.

 Appellant also complains of questions by the court concerning the
penalties available in this case. The court carried on a conversation
with the State, appellant's trial counsel, and the probation officer in an
attempt to clarify what options were available upon the revocation of
appellant's community supervision. The questions reveal no partiality,
but are simply queries as to the range of punishments available. 



The Community Supervision Officer's Unsworn Testimony

 Under the rules of evidence, every witness shall be required, by
oath or affirmation, to declare that the witness will testify truthfully. 
Tex. R. Evid. 603. The right to have a witness sworn can be waived. 
Beck v. State, 719 S.W.2d 205, 213 (Tex. Crim. App.--1986). By failing
to object to unsworn testimony before the close of the trial, a defendant
waives the right to have a witness sworn. Castillo v. State, 739 S.W.2d
280, 297 (Tex. Crim. App. 1987) (objection is too late if made after the
verdict). Appellant waived his complaints about the probation officer's
unsworn testimony when he did not object during the hearing.

Voluntariness of Appellant's Pleas of True

 Appellant argues that the trial court relied upon the unsworn
testimony of the 

community supervision officer to decide what punishment to assess,
and that this reliance undermined the voluntariness of the appellant's
pleas of true to the allegations raised by the State's motion to revoke
probation. Appellant contends that, although his pleas of true were
voluntary at the time he made them, the actions of the trial court at the
hearing on the motion to revoke rendered the pleas involuntary. We do
not accept appellant's argument that actions taken by a trial court after
the appellant has pleaded true to the allegations in a motion to revoke
can retroactively render a plea involuntary. See Ray v. State, 919
S.W.2d 125, 127 (Tex. Crim. App. 1996) (in the context of a non-negotiated plea, it is "a perverse notion that a plea made voluntarily and
knowingly" becomes involuntary because the judge failed to warn of
consequences faced by defendant if defendant violated terms of
deferred adjudication). To hold that actions taken by a trial court
following a voluntary plea of true can render that plea involuntary would
enable any defendant who was unhappy with the sentence levied
against him following a plea of true to claim his plea was involuntary. 


Ineffective Assistance of Counsel

 Appellant raises a claim of ineffective assistance of counsel. To
determine if a trial counsel's representation was ineffective to the point
that it violated a defendant's Sixth Amendment right to counsel, we
apply a two-part test set out by the United States Supreme Court. 
Strickland v. Washington, 466 U.S. 668 (1984); Hernandez v. State, 726
S.W.2d 53, 55 (Tex. Crim. App. 1986). To establish ineffective
assistance of counsel, a defendant must show that (1) his counsel's
performance was deficient, and (2) the defendant suffered harm as a
result of his counsel's inadequate performance. Thompson v. State, 9
S.W.3d 808, 812 (Tex. Crim. App. 1999). The appellant must show a
reasonable probability that, but for counsel's unprofessional errors, the
outcome of the trial would have been different. Id.; Holland v. State,
761 S.W.2d 307, 314 (Tex. Crim. App. 1988). In this context, a
reasonable probability is a probability sufficient to undermine
confidence in the outcome. Thompson, 9 S.W.3d at 812; Hernandez,
726 S.W.2d at 55. There is a strong presumption that the trial counsel
provided effective assistance. Stafford v. State, 813 S.W.2d 503, 506
(Tex. Crim. App. 1991).

 On the record before this Court, we do not find that appellant
suffered from ineffective assistance of counsel. Appellant argues that
his trial counsel erred by not objecting to the unsworn statements of
the community supervision officer. Even assuming, arguendo, that
appellant's trial counsel was deficient in objecting to the testimony,
appellant has not shown any harm resulted from the testimony. 
Appellant admits that had his trial counsel objected, the likely result
would have been that the State would have had the community
supervision officer placed under oath and would have elicited the same
testimony. Furthermore, some of the statements by the community
supervision officer supported appellant's claims that he was being
threatened and that he had generally made an effort to meet the
requirements of his community supervision. We do not find a
reasonable probability that, but for the failure of appellant's trial counsel
to object to the community supervision officer's testimony, the outcome
of the revocation hearing would have been different.

The Trial Court's Judgment Both appellant and the State argue that the trial court's written
judgment is incorrect because it does not reflect the trial court's oral
pronouncement of the sentence. The written judgment signed by the
trial court on February 11, 1999 does not accurately state the sentence
pronounced by the trial court at the close of the hearing on the State's
motion to revoke. At the end of the of the hearing, the trial court stated

 Based on your pleas of true and the evidence presented
the [c]ourt does find that you've violated your conditions of
probation. This [c]ourt is going to sentence you to 10 years
in the Institutional Division of the Texas Department of
Criminal Justice. You are hereby remanded to the custody
of the Sheriff of Nueces County who will then deliver you to
the Institutional Division of the Texas Department of Criminal
Justice to serve out your time.


 The written judgment is styled "Judgment adjudicating guilt," and
states, incorrectly, that following appellant's original plea of guilty to
indecency with a child in 1994, adjudication of guilt was deferred and
appellant was placed on community supervision.(2) According to the
written judgment, appellant was found guilty and sentenced to ten
years confinement in the TDCJ-ID, with the imposition of imprisonment
suspended and appellant placed on ten years community supervision. 
The written judgment does not correctly state the sentence pronounced
by the court at the revocation hearing, which sentenced appellant to
confinement for ten years.

 The State and appellant both request that this Court correct the
written judgment to comport with the oral rendition of sentence. When
there is a variation between the oral pronouncement of sentence and
the written memorialization of the sentence, the oral pronouncement
controls. Coffey v. State, 979 S.W.2d 326, 328 (Tex. Crim. App. 1998). 
We therefore modify the written judgment of the court to show that
appellant was found guilty of violating probation and sentenced to ten
years confinement in the Texas Department of Criminal Justice,
Institutional Division, and as modified, affirm. See Tex. R. App. P.
43.2(b) (appellate court may modify trial court's judgment and affirm it
as modified).

 The judgment of the trial court is MODIFIED and, AFFIRMED as
modified.



 

 
 LINDA REYNA YAÑEZ

 Justice


Do not publish. Tex. R. App. P. 47.3.


Opinion delivered and filed this the

15th day of March, 2001.

1. Retired Chief Justice Robert Seerden assigned to this Court by the Chief Justice of
the Supreme Court of Texas pursuant to TEX. GOV'T Code ANN. § 74.003 (Vernon 1998).
2. In fact, in 1994, appellant was found guilty and sentenced to
ten years confinement in the TDCJ-ID, with imposition of
imprisonment suspended and appellant placed on ten years
community supervision.