# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00245-CR

**Jonathan Audon Sambrano, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL DISTRICT NO. B-07-1227-S, HONORABLE BEN WOODWARD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Jonathan Sambrano was convicted of aggravated assault with a deadly weapon. *See* Tex. Penal Code Ann. §§ 1.07(a)(17)(B) (deadly weapon), 22.02 (West Supp. 2009) (aggravated assault); *see also id.* § 22.01 (West Supp. 2009) (assault). A self-defense instruction was given in the jury charge, but the jury found Sambrano guilty. *See id.* §§ 9.31-.34 (West 2003 & Supp. 2009) (explaining circumstances in which person is authorized to engage in self-defense). After finding Sambrano guilty, the jury sentenced him to thirty years' imprisonment. On appeal, Sambrano raises a legal and a factual sufficiency challenge to the evidence presented at trial. Specifically, he alleges that the evidence is insufficient to support the jury's rejection of his self-defense claim. We will affirm the judgment of the district court.

## BACKGROUND

On an afternoon in February 2008, Anthony Trevino went to the residence of Debbie Gaitan for a social visit. Soon thereafter, Sambrano arrived. At some point in the afternoon,

Sambrano and Trevino got into a fight that ultimately led to Sambrano stabbing Trevino in the neck. After the stabbing, Sambrano left Gaitan's home, and the police were called. Officer Edwin Smith responded to the call. Shortly after arriving at the scene and quickly talking with individuals who had been at Gaitan's house at the time of the incident, Smith left the scene in order to look for Sambrano. Once Smith found Sambrano, he arrested Sambrano.

After his arrest, Sambrano was charged with aggravated assault with a deadly weapon.[1] *See id.* §§ 1.07(a)(17)(B), 22.02. Specifically, he was alleged to have "intentionally, knowingly, or recklessly cause[d] bodily injury to Anthony Trevino by cutting" Trevino. Ultimately, a trial was held, and Trevino, Sambrano, and Smith testified regarding the events leading up to and occurring shortly after the stabbing. In addition, Teri Adams, a crime-scene technician for the San Angelo police department, provided testimony regarding the evidence that was collected at the scene.

At the end of the trial, a charge was prepared and given to the jury. The charge included a self-defense instruction.[2] After the trial concluded, the jury found Sambrano guilty of

---

[1] "A deadly weapon finding limits a defendant's eligibility for community supervision and parole." *Mann v. State*, 58 S.W.3d 132, 132 n.1 (Tex. Crim. App. 2001); *see* Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (West Supp. 2009) (explaining that portion of code allowing for judicially ordered community supervision does not apply when deadly-weapon finding is made); Tex. Gov't Code Ann. §§ 508.145 (imposing minimum time before defendant with deadly-weapon finding may be released on parole), 508.149 (prohibiting defendant with deadly-weapon finding from being released to mandatory supervision), 508.151 (West Supp. 2009) (explaining that parole panel may not establish presumptive parole date for defendant with deadly-weapon finding).

[2] In particular, the charge stated that the jury should find Sambrano not guilty if they determined that:

> (1) JONATHAN AUDON SAMBRANO reasonably believed that the use of deadly force on his part was immediately necessary to protect himself against Anthony

2

the charged offense. During sentencing, Sambrano pleaded true to a prior conviction for an assault on a public servant, which elevated the charged crime at issue from a second-degree felony to a first-degree felony. *See id.* §§ 12.42(b) (West Supp. 2009) (elevating punishments due to prior offenses), 22.01(b)(1) (listing elements for assault of public servant), 22.02(b) (explaining that aggravated assault is second-degree felony). At the conclusion of the punishment hearing, the jury sentenced Sambrano to thirty years' imprisonment.

Sambrano appeals the judgment of the district court.

**DISCUSSION**

As mentioned above, in two issues on appeal, Sambrano raises a legal- and a factual-sufficiency challenge. Specifically, in his first issue, Sambrano argues that the evidence is "legally insufficient to sustain Mr. Sambrano's conviction for aggravated assault with a deadly weapon (enhanced) because no rational trier of fact would have found against Mr. Sambrano on the self-defense issue beyond a reasonable doubt." In his second issue on appeal, Sambrano asserts that the evidence is "factually insufficient to sustain [his] conviction . . . because the fact-finders' rejection of the self-defense theory is so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust." In other words, Sambrano contends that the evidence is legally and factually

Trevino's use or attempted use of unlawful deadly force, and (2) that a reasonable person in defendant's situation would not have retreated, and (3) although JONATHAN AUDON SAMBRANO provoked Anthony Trevino's use of attempted use of unlawful force, (A) JONATHAN AUDON SAMBRANO either abandoned the encounter, or clearly communicated to Anthony Trevino JONATHAN AUDON SAMBRANO's intent to do so, reasonably believing that JONATHAN AUDON SAMBRANO could not safely abandon the encounter; and (B) Anthony Trevino nevertheless continued or attempted to use unlawful force against JONATHAN AUDON SAMBRANO.

insufficient to support his conviction because the jury could not have properly rejected his self-defense theory in light of the evidence introduced at trial. On the contrary, Sambrano contends that the evidence supports a determination that Trevino tried to stab Sambrano first and that Sambrano only used the knife in self-defense.

As support for his assertions that the evidence is insufficient, Sambrano notes that only he and Trevino testified regarding the altercation and that the portions of their testimonies regarding the use of the knife directly contradicted one another. In light of these conflicting accounts, Sambrano contends that the jury could not have found against him on his self-defense theory. Moreover, he refers to evidence pertaining to the injuries he sustained during the fight as proof that Trevino tried to use the knife first. Finally, Sambrano notes that no genetic or fingerprint testing was performed on any of the items collected at the scene and asserts, in light of that failing, that the jury could not have properly disregarded the possibility that Trevino tried to stab Sambrano first.

When a defendant alleges that he acted in self-defense, the State is not required to produce any evidence refuting that claim. *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991). Rather, the State only has the burden of persuasion to prove its case beyond a reasonable doubt, *id.,* and it is the defendant who has the burden of producing evidence supporting his self-defense claim, *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). In addition, a determination regarding self-defense is "an issue of fact to be determined by the jury." *Saxton*, 804 S.W.2d at 914; *see Harrod v. State*, 203 S.W.3d 622, 627 (Tex. App.—Dallas 2006, no pet.). Accordingly, the jury is free to accept or reject "the defensive evidence" because credibility

4

determinations regarding that type of evidence are "solely within the jury's province." *Saxton*, 804 S.W.2d at 914. In rejecting the claim of self-defense, the jury does not need to unanimously agree on the "specific component of self-defense on which it is not persuaded" but only on "rejection of the fact of self-defense." *Harrod*, 203 S.W.3d at 627. If the jury finds the defendant guilty at the end of the trial, then the jury implicitly rejected the defense. *Saxton*, 804 S.W.2d at 914; *see Harrod*, 203 S.W.3d at 627.

For these reasons, when performing a legal-sufficiency review pertaining to a self-defense claim, appellate courts do not consider whether "the State presented evidence which refuted appellant's self-defense testimony." *Saxton*, 804 S.W.2d at 914; *see Velasquez v. State*, 815 S.W.2d 842, 844 (Tex. App.—Corpus Christi 1991, no pet.). Rather, appellate courts view "all the evidence in the light most favorable to the prosecution" and determine whether "any rational trier of fact would have found the essential elements of" the crime "beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt." *Saxton*, 804 S.W.2d at 914; *see Valdez v. State*, 841 S.W.2d 41, 43 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd); *see also Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (explaining that under legal-sufficiency review, courts may consider evidence and reasonable inferences from evidence presented). Under this standard, reviewing courts must bear in mind that the trier of fact is entitled to determine what weight to give any particular evidence, to resolve conflicts in the evidence, and to evaluate the credibility of the witnesses. *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). Accordingly, the admission of evidence supporting the defensive theory will not render the evidence insufficient because "the credibility determination of such evidence

is solely within the jury's province." *Hull v. State*, 871 S.W.2d 786, 790 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd).

Unlike in legal-sufficiency reviews, in factual-sufficiency determinations, all of the evidence is considered in a neutral light. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). When performing this analysis, courts bear in mind that the fact finder is the sole judge of the weight and the credibility of the evidence presented. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); *see also* Tex. Code Crim. Proc. Ann. art. 36.13 (West 2007) (explaining that "jury is the exclusive judge of the facts"). Under a factual-sufficiency review, a reversal is not warranted simply because the appellate court has "a subjective level of reasonable doubt." *Watson*, 204 S.W.3d at 417. Rather, when a challenge is made to the factual sufficiency of the rejection of a self-defense claim, reviewing courts examine "all of the evidence in a neutral light and ask whether the State's evidence taken alone is too weak to support the finding and whether the proof of guilt, although adequate if taken alone, is against the great weight and preponderance of the evidence." *Zuliani*, 97 S.W.3d at 595.

When presenting his issues on appeal, Sambrano does not dispute that he assaulted Trevino with a deadly weapon or that he was the initial aggressor. *See* Tex. Penal Code Ann. §§ 22.01(a)(1) (explaining that individual commits assault if he "intentionally, knowingly, or recklessly causes bodily injury to another"), .02(a)(2) (stating that person commits aggravated assault if he uses "a deadly weapon during the commission of the assault"); *see also id.* § 1.07(a)(17)(B) (defining "deadly weapon" as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury"). In fact, during trial, Sambrano testified that he asked to borrow Trevino's cell phone and later refused to return it when Trevino asked for it back. Further,

6

Sambrano stated that after he refused to give the phone back, he punched Trevino. Although he explained that he mistakenly thought that Trevino had gone to Gaitan's house for the purpose of fighting him, he testified that he deliberately tried "to pick a fight with [Trevino]." Later, Sambrano admitted that he "stuck [Trevino] in the neck" with a knife.[3] Regarding the stabbing, Sambrano testified that he thought he "stuck [Trevino] twice, like, within the same area."[4]

Trevino corroborated the portion of Sambrano's testimony relating that Sambrano initiated the fight and that Sambrano stabbed him. Specifically, Trevino stated that sometime after Sambrano arrived at Gaitan's house, Sambrano saw him talking on his cell phone and asked to borrow the phone. In addition, Trevino testified that he initially let Sambrano borrow the phone but that Sambrano later refused to return the phone unless Trevino "g[a]ve him $50." Furthermore, Trevino revealed that when he refused to pay, Sambrano punched him on his left eye and then started repeatedly hitting him.[5] Moreover, Trevino testified that Sambrano began choking him, which caused him to pass out for "about 30, 45 seconds."[6] Trevino also explained that once he regained consciousness, he observed Sambrano leaving the room and then got up and again asked Sambrano to return the phone. Finally, Trevino stated that after he asked for his phone, Sambrano "swung at"

---

[3] Testimony was introduced during trial demonstrating that the knife was recovered from the scene and had a blade length of approximately eight centimeters (three inches).

[4] Sambrano's assertion that he stabbed Trevino twice is consistent with the testimony of the crime-scene investigator. In her testimony, Adams stated that Trevino "had a laceration on the left side of his neck that was approximately four centimeters long" and a second laceration on his left jaw.

[5] During her testimony, Adams mentioned that Sambrano had "swelling around the left eye."

[6] In his testimony, Sambrano did not deny choking Trevino, but he did state that he did not believe that Trevino lost consciousness.

7

him "[w]ith a knife" and ultimately "hit" him on his "left neck." In describing the incident, Trevino explained that he never had possession of the knife, did not attempt to stab Sambrano, and did not observe anyone else try to stab Sambrano.

To support his sufficiency argument, Sambrano refers to portions of his testimony in which he stated that he only stabbed Trevino in self-defense. Because it is undisputed that Sambrano was the initial aggressor, he was only entitled to use self-defense if he had "abandon[ed] the encounter, or clearly communicate[ed] to the other his intent to do so reasonably believing he cannot safely abandon the encounter; and . . . the other nevertheless continue[d] or attempt[ed] to use unlawful force against" him. *See* Tex. Penal Code Ann. § 9.31(b)(4) (West Supp. 2009). In his testimony, Sambrano explained that after their initial fight, he left Trevino in one room and went to the kitchen. Then, Sambrano stated that Trevino "came at [him] with" a knife and "cut [him] on [his] arm." Sambrano further testified that after being cut, he "started hitting [Trevino] again and the knife fell on the kitchen counter." Finally, Sambrano explained that it was only after Trevino dropped the knife that he picked up the knife to stab Trevino. In light of the preceding, Sambrano insists that he only used the knife in self-defense.

As mentioned by Sambrano, his and Trevino's recitations of the incident in question are inconsistent with one another. However, the jury is charged with resolving these types of inconsistencies and with weighing the credibility of the testifying witnesses. *See Watson*, 204 S.W.3d at 414 (explaining role that jury's resolutions have in factual-sufficiency reviews); *Jones*, 944 S.W.2d at 647 (describing manner in which jury determinations should be treated in legal-sufficiency reviews). Although Sambrano testified that he only acted in self-defense, the jury

8

was free to disbelieve that testimony. *See Alvarado v. State*, 821 S.W.2d 369, 372 (Tex. App.—Corpus Christi 1991, no pet.).

Moreover, although the jury was free to disbelieve Sambrano's testimony, we note that evidence regarding the credibility of Sambrano and Trevino was also introduced during trial. In addition to the testimony from Trevino and Sambrano that Sambrano had been the initial aggressor, had refused to return Trevino's phone, and had deliberately caused the fight,[7] the jury was also presented with evidence that Sambrano, not Trevino, left the scene right after the fight ended. *See Clay v. State*, 240 S.W.3d 895, 905 n.11 (Tex. Crim. App. 2007) (noting that "[e]vidence of flight evinces a consciousness of guilt"). Specifically, Trevino stated that Sambrano left after stabbing him, and Sambrano testified that he remained in the home "for about a good minute" after the fight ended and then told his friend that he was ready to leave.[8] Further, Officer Smith testified that after responding to the 911 call and quickly talking with Trevino at the scene, he saw Sambrano fleeing the area. Finally, the jury was presented with evidence that Trevino had never been convicted of a crime but that Sambrano had previously been convicted of three felony offenses. One of those convictions was for another assaultive offense. *See* Tex. Penal Code Ann. § 22.01(b)(1) (listing elements for assault of "a public servant").

In addition to noting that Trevino's and his versions of the events leading up to the stabbing differ, Sambrano also refers to testimony regarding an injury he sustained as support for his sufficiency challenge. As mentioned previously, Sambrano testified that Trevino cut his arm. In his

---

[7] In his testimony, Sambrano also stated that even if there had been no knife, "We would have just kept fighting."

[8] In his testimony, Sambrano related that after the stabbing, his friend stated that she thought that they should not leave Gaitan's house and appeared to be "mad at [him] or something."

9

testimony, Officer Smith described an injury to Sambrano's arm, speculated that the injury must have occurred "during the fight," and stated that it was possible that the injury could have been caused by a knife. However, Smith also explained that the injury appeared "to be more of a scratch than a cut." Similarly, when referring to photographs of Sambrano's injuries, the crime-scene technician, Adams, agreed that Sambrano's injuries were superficial. Furthermore, in his testimony, Trevino denied ever using or having possession of the knife. In light of the preceding and the evidence summarized above, the jury could have reasonably concluded that the injury to Sambrano's arm was not caused by Trevino using the knife against Sambrano.[9]

Regarding Sambrano's claim that the absence of genetic and fingerprint testing on the items recovered from the scene prohibited a proper rejection of his self-defense theory, his assertion ignores that fact that a jury may properly convict a defendant and, accordingly, reject a self-defense claim in the absence of these types of testing provided that the State proves the elements of the crime alleged beyond a reasonable doubt. In this case, the jury was presented with competing versions of the event by the two individuals involved in the altercation. Moreover, the jury was given additional information regarding the injuries sustained to each party and concerning the credibility of the witnesses. The jury was free to conclude, based on the evidence, that Sambrano

---

[9] Even assuming that the jury determined that Trevino had picked up and used the knife before Sambrano did, the jury could still have properly found against Sambrano on the self-defense issue. Although Sambrano testified that he left the room that he had initially attacked Trevino in, nothing in Sambrano's testimony indicates that he clearly communicated to Trevino that he was stopping the fight. *See* Tex. Penal Code Ann. § 9.31(b)(4) (West Supp. 2009). Moreover, given the brief passage of time between when Sambrano left the first room and when the fighting resumed and given his testimony regarding his role in the fight, the jury could have reasonably determined that Sambrano had not abandoned the attack. Finally, Sambrano did not testify that he felt that he could not safely leave the area or abandon the encounter. In fact, when asked if he was "in fear for [his] safety when [Trevino] came at [him] with a knife" and if he was "afraid [Trevino] was going to cut" him, Sambrano answered, "Not really. I just started swinging on him."

10

did not engage in self-defense. Additionally, Adams testified that it was rare to ever obtain fingerprint evidence and that in most cases involving a knife, she was not asked to test for fingerprints.

Bearing in mind the jury's duty to resolve inconsistencies in the evidence and viewing the evidence in the light most favorable to the verdict, we must conclude that a rational trier of fact could have determined beyond a reasonable doubt that Sambrano had assaulted Trevino with a deadly weapon and found against Sambrano on his self-defense claim. *See Saxton*, 804 S.W.2d at 914. Accordingly, we conclude that there was legally sufficient evidence. In addition, when viewing the evidence neutrally, we must conclude that the evidence of Sambrano's guilt is not too weak to support his conviction for assault with a deadly weapon. Moreover, in light of the jury's role as the sole judge of the weight and the credibility of the evidence presented, we also cannot conclude that the evidence of Sambrano's guilt, when compared to all of the evidence, is against the preponderance or the great weight of the evidence. *See Watson*, 204 S.W.3d at 414; *Zuliani*, 97 S.W.3d at 595. Therefore, we conclude that the evidence presented during trial was factually sufficient to support the jury's determinations.[10]

_____

[10] In the factual-sufficiency section of his brief, Sambrano also refers to a specific portion of Trevino's testimony as definitive proof that Trevino tried to stab Sambrano first. In his testimony, Trevino stated that Gaitan tried to warn him of the danger and said, "Watch out. [Sambrano] got the knife." Sambrano insists that this statement implies, "at the least, that Trevino had first dropped the knife as Sambrano testified."

Although Sambrano insists that Trevino's statement in his testimony that Sambrano "got" the knife renders the evidence factually insufficient to support the jury's rejection of his self-defense claim, that statement does not automatically compel the conclusion that Sambrano urges. Nothing in Sambrano's briefing persuades us that it would be appropriate to apply the level of linguistic precision to Trevino's testimony that his argument inherently requires. Moreover, his argument

11

For all the reasons previously given, we overrule Sambrano's first and second issues on appeal.

## CONCLUSION

Having overruled all of Sambrano's issues on appeal, we affirm the judgment of the district court.

_____

David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed

Filed:   April 14, 2010

Do Not Publish

---

ignores the function of the jury to perform credibility determinations and decide what weight to give the testimony presented.  Given Trevino's other statements that he did not handle or use the knife, the jury could have reasonably determined that Trevino was not implying that he used the knife before Sambrano did.  In other words, in light of the other testimony introduced, the jury could have reasonably determined that the statement simply meant that Sambrano picked up the knife in the kitchen, which led to Gaitan's warning.