

**NUMBER 13-08-00602-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **THE STATE OF TEXAS,** | **Appellant,** |
| **v.** | |
| **CASIMIRO VASQUEZ,** | **Appellee.** |

### On appeal from the 138th District Court
### of Cameron County, Texas.

# O P I N I O N

### Before Chief Justice Valdez and Justices Rodriguez and Garza
### Opinion by Chief Justice Valdez

The State appeals a trial court's order granting a motion to suppress that was filed by appellee, Casimiro Vasquez. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5) (Vernon Supp. 2009) (providing that the State is entitled to appeal an order of a court in a criminal case if the order grants a motion to suppress evidence). In two issues, the State contends that the trial court erred by (1) finding that Vasquez invoked his right to counsel during a custodial interrogation, and (2) implicitly finding that Vasquez was subjected to a custodial

interrogation rather than a non-custodial interview. We affirm.

## I. Background

On June 23, 2001, the body of Gerrado Garcia was found in Cameron County, Texas. Foul play was suspected. Shortly after the murder, Guillermo Garcia and Vasquez provided written statements to Cameron County Sheriff's deputies. After Vasquez had provided a written statement, he retained the law firm of Garcia & Sorola, P.L.L.C. to represent him throughout the murder investigation. Gabby Garcia, a partner at the firm and Vasquez's primary attorney, gave oral and written notice to Manuel Trevino, an investigator at the district attorney's office, to arrange any further communications with Vasquez through her because her law firm represented Vasquez. Thereafter, the case went cold for four years.

On June 20, 2005, sheriff's deputies, who allegedly did not know that Vasquez was represented by counsel, contacted Vasquez and secured a second written statement from him despite the absence of Gabby Garcia, whose presence Vasquez had allegedly repeatedly requested. Approximately two years later, Guillermo Garcia and Vasquez were indicted for the murder of Gerardo Garcia. *See* TEX. PENAL CODE ANN. § 19.02 (Vernon 2003). Vasquez pleaded not guilty to the charge. Shortly after the indictment, Vasquez moved to suppress his June 20, 2005 written statement on the grounds that it was taken in violation of the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, article I, sections 9 and 10 of the Texas Constitution, and articles 1.05 and 38.23 of the Texas Code of Criminal Procedure. *See* U.S. CONST. amends. IV, V, VI, XIV; TEX. CONST. art. I, §§ 9, 10; TEX. CODE CRIM. PROC. ANN. arts. 1.05, 38.23 (Vernon 2005). The State did not respond in writing to Vasquez's motion.

On September 30, 2008, the trial court held a hearing on Vasquez's motion to

2

suppress. At the hearing, the State called the following Cameron County Sheriff's Department deputies: Sergeant Andy Arreola, Captain Javier Reyna, and Lieutenant Carlos Garcia. Vasquez called Manuel Trevino, Gabby Garcia, and himself.

## A.    The State's Witnesses

### 1.    Sergeant Andy Arreola

Arreola, an investigator, testified that he had only "minimum" involvement during the initial 2001 investigation into Gerardo Garcia's murder and that he had not met Vasquez until 2005. In 2005, Reyna, Arreola's supervisor, assigned the "cold case" to Arreola, and Arreola reviewed the whole file, including the 2001 statements of Guillermo Garcia and Vasquez. Arreola noticed alleged discrepancies between Guillermo Garcia's and Vasquez's statements and decided to speak to Vasquez.

On June 20, 2005, Arreola, accompanied by another sheriff's deputy, went to Vasquez's house and asked Vasquez if he would accompany them to the sheriff's department to talk about his 2001 statements regarding Gerrado Garcia's murder. According to Arreola, Vasquez cooperated and could have declined the invitation. When the three arrived at the department, Reyna read Vasquez his *Miranda* rights, *see Miranda v. Arizona*, 348 U.S. 436, 444 (1966), and Vasquez signed a waiver of those rights. Arreola recalled that Reyna conducted most of the interview, and Reyna told Vasquez, "You're free to leave if you don't want to answer, if you don't want to talk to us."

On cross-examination by Vasquez's counsel, Arreola acknowledged that he did not call Vasquez when he discovered the alleged discrepancies, but instead, personally visited him at home. Arreola denied hearing Reyna tell Vasquez that he was or was not represented by counsel, and stated that he never saw Reyna attempt to call Vasquez's counsel on his cell phone. Arreola was present throughout the interview, but stepped out

3

after the interview had concluded. Arreola also stated that the file did not indicate whether Vasquez was represented by counsel.

### 2. Captain Javier Reyna

That same day, Reyna asked Arreola to bring Vasquez to the department. Vasquez was placed in Arreola's office, which, according to Reyna, is not normally used for custodial interrogations. Reyna testified that Vasquez did not say that he had a lawyer, and Reyna claimed he did not call Gabby Garcia in reference to Vasquez.

On cross-examination by Vasquez's counsel, Reyna was asked why cell phone records showed that there were two calls placed from a sheriff's office phone to Gabby Garcia at 11:04 a.m. and 2:38 p.m. on June 20, 2005. At 3:00 p.m. the same day, a call from Reyna's personal cell phone was made to Gabby Garcia's cell phone.[1] Reyna confirmed that he could have called Gabby Garcia on other law enforcement matters because, at the time of the interview, she was an assistant district attorney.

### 3. Lieutenant Carlos Garcia

Carlos Garcia was present for parts of the interview with Vasquez. After Vasquez signed the statement, Carlos Garcia called Gabby Garcia "because of the circumstances that we had during this case that we were looking at." After June 20, 2005, Henry Juarez, an attorney, called the sheriff's department and notified Carlos Garcia that he represented Vasquez.

On cross-examination by Vasquez's counsel, Carlos Garcia testified that he did not see Vasquez in handcuffs. He also stated that confessions are taken in interview rooms and offices alike.

---

[1] The cell phone records do not appear in the record, but they were referenced by Vasquez's counsel throughout the hearing, and no objection was made by the State.

**B.    Vasquez's Witnesses**

*1.    Manuel "Manny" Trevino*

Trevino, an investigator with the district attorney's office, testified that he assisted in the 2001 investigation. Trevino was informed by Gabby Garcia that she represented Vasquez and that any questions regarding Vasquez were to be addressed through her. Trevino did not make a note in the file because Armando Maldonado was the "case agent." Trevino claimed he also informed Arreola of his conversation with Gabby Garcia because Arreola had worked on the case.

*2.    Gabby Garcia*

Gabby Garcia worked for the Cameron County District Attorney's office from March 1996 through July 1999. After 1999, she entered private practice until January 2005, when she returned to the district attorney's office; she left the district attorney's office in August 2007. In 2001, the law firm of Garcia & Sorola, P.L.L.C. was retained to represent Vasquez on a possible murder charge. Gabby Garcia, a partner in the firm and Vasquez's primary attorney, contacted Trevino and informed him in person and in writing that the firm represented Vasquez. After this notice, there was no activity in the case. In 2005, when Gabby Garcia became employed by the district attorney's office, she did not notify Vasquez that she could no longer represent him.

Before 11:00 a.m. on June 20, 2005, Gabby Garcia received a voice mail on her office line from someone at the sheriff's department regarding Vasquez. She spoke to Carlos Garcia and Reyna. After reviewing her June 2005 cell phone bill, Gabby Garcia testified that she primarily spoke with Carlos Garcia about Vasquez.

On cross-examination by the State, Gabby Garcia testified that she received another

phone call from a sheriff's deputy at 11:04 a.m., and it was in reference to whether she represented Vasquez.

### 3. *Casimiro Vasquez*

Vasquez testified that in 2005, two sheriff's deputies approached him at home and asked him to accompany them to the sheriff's department for some questions, but they did not say what the questions regarded. According to Vasquez, the officers did not inform him that he could refuse to go. Vasquez testified that while sitting in Arreola's office, he told Reyna that Gabby Garcia was his attorney, to which Reyna responded, "[You don't] have a lawyer any more." Vasquez rejoined by insisting that Gabby Garcia was his attorney. According to Vasquez, after he repeatedly informed Reyna about Gabby Garcia being his attorney, Reyna tried calling Gabby Garcia. Vasquez also stated that Reyna did not tell him he was free to leave until after the statement was given. Contrary to Arreola's testimony, Vasquez claimed all three officers in the room asked questions.

On cross-examination by the State, Vasquez testified that the sheriff's deputies who showed up at his house in 2005 "said [he] had to" go with them, but they did not handcuff him. Vasquez acknowledged signing his *Miranda* warnings and speaking to the authorities, but he claimed that he did so because they insisted on talking to him. Vasquez further testified that he gave the statement because the deputies would not let him talk to his attorney.

## C. Trial Court's Disposition

On October 1, 2008, the trial court granted Vasquez's motion to suppress. Specifically, the trial court concluded that:

> The Defendant, CASIMIRO VASQUEZ having previously declared his desire

6

to deal with the Cameron County Sheriff's Office only through counsel was not subject to further interrogation until counsel had been made available to him, unless the Defendant, CASIMIRO VASQUEZ had initiated the communication, which he did not. Here the communication with Defendant, CASIMIRO VASQUEZ was at the insistence of the authorities, and his statement on June 20, 2005 made without having had access to counsel did not amount to a valid waiver and hence is inadmissible.

This appeal followed.

## II. Custodial Interrogation or "Friendly Interview"

In its second issue, the State contends that the trial court erred by implicitly finding that Vasquez was subjected to a custodial interrogation when the 2005 statement was made. The State maintains that *Miranda* rights are inapplicable to the instant case because, even though he was given a *Miranda* warning at the outset, Vasquez was not in custody at the time he made his 2005 statement. *See Miranda*, 384 U.S. at 444. According to the State, because Vasquez voluntarily participated in a "friendly non-custodial interview," sheriff's deputies were not required to stop questioning him when he asked to speak to his attorney. Vasquez counters by arguing that the 2005 statement was elicited during a custodial interrogation because he did not feel free to leave until after he gave the statement.

## A. Standard of Review

We review the trial court's ruling on a motion to suppress evidence for abuse of discretion, using a bifurcated standard. *See Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997). We give "almost total deference" to the trial court's findings of historical fact that are supported by the record and to mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Id*. at 89. We review de novo the trial court's determination of the law and its application of law to facts that do not turn upon an

7

evaluation of credibility and demeanor. *Id.* When the trial court has not made a finding on a relevant fact, we imply the finding that supports the trial court's ruling, so long as it finds some support in the record. *State v. Kelly*, 204 S.W.3d 808, 818-19 (Tex. Crim. App. 2006); *see Moran v. State*, 213 S.W.3d 917, 922 (Tex. Crim. App. 2007). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

**B.      Hallmarks of a Custodial Interrogation**

"A person is in custody if, under the totality of the circumstances, a reasonable person would believe his freedom of movement was restrained to the degree associated with a formal arrest." *Stansbury v. California*, 511 U.S. 318, 322 (1994); *Dowthitt v. State*, 931 S.W.2d 244, 254-55 (Tex. Crim. App. 1996); *Houston v. State*, 185 S.W.3d 917, 920 (Tex. App.–Austin 2006, pet. ref'd). "The 'reasonable person' test presupposes an *innocent* person." *Florida v. Bostick*, 501 U.S. 429, 438 (1991) (emphasis in original); *Dowthitt*, 931 S.W.2d at 254. Moreover, the initial determination of custody depends on the objective circumstances of the interrogation, not the subjective views of the police or the person being questioned. *Stansbury*, 511 U.S. at 323; *Dowthitt*, 931 S.W.2d at 254; *Houston*, 185 S.W.3d at 920.

When a person voluntarily accompanies officers to an interview, and he knows or should know that the police officers suspect he may be implicated in the crime under investigation, he is not "restrained of his freedom of movement" and is not in custody. *Shiflet v. State*, 732 S.W.2d 622, 630 (Tex. Crim. App. 1985). However, an interview that begins as noncustodial may escalate into a custodial interrogation because of police

8

conduct during the encounter.  *Dowthitt*, 931 S.W.2d at 255.

In determining whether a custodial interrogation, we examine the totality of the circumstances in light of the four factors discussed in *Dowthitt*, which are:  (1) if the suspect is physically deprived of his freedom of action in any significant way; (2) if law enforcement officers tell a suspect that he cannot leave; (3) if law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; or (4) if there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave.  *Id*.

In this case, Vasquez was given *Miranda* warnings at some point before he executed the 2005 statement.  Some federal appellate courts have held that the reading of *Miranda* warnings does not automatically transform a non-custodial setting into a custodial interrogation.  *See United States v. Bautista*, 145 F.3d 1140, 1148 (10th Cir. 1998); *Sprosty v. Buchler*, 79 F.3d 635, 642 (7th Cir. 1996).  However, those courts have also held that the giving of *Miranda* warnings is a factor in the determination of whether a reasonable person would believe that he is in custody.  *See Bautista*, 145 F.3d at 1148; *Sprosty*, 79 F.3d at 642.

## C.    Analysis

Viewing the evidence in the light most favorable to the trial court's decision, we find there is some evidence to support an implicit finding that Vasquez was physically deprived of his freedom of action in a significant way by not being provided the retained counsel that he repeatedly requested.  At the suppression hearing, Vasquez testified that, while at home, he was approached by Arreola and a sheriff's deputy, and either Arreola or the

9

sheriff's deputy "said [he] had to" go to the sheriff's department for questioning. Once at the sheriff's department, and while sitting in Arreola's office, Reyna gave Vasquez *Miranda* warnings.

There is conflicting testimony as to what exactly transpired during the allegedly "friendly interview." According to Arreola, Reyna told Vasquez, "You're free to leave if you don't want to answer, if you don't want to talk to us." Vasquez then made the written statement after being questioned by only Reyna. However, according to Vasquez, the "you're free to leave" statement did not occur until after he was questioned by Reyna, Arreola, and another deputy, and after he had given his written statement. Additionally, Vasquez claimed that when he asked for his attorney, Gabby Garcia, Reyna told him, "[You don't] have a lawyer any more", and the interview continued. Faced with constant questioning by three officers and Reyna's refusal to allow Vasquez to speak to his attorney, Vasquez spoke to the officers and provided a written statement.

A reasonable, innocent person in Vasquez's position who was: (1) approached at home by two sheriff's deputies and told that he "had to go" with them, without reference to the matter in question, (2) taken to a sheriff's department office, (3) *Mirandized*, (4) questioned by three officers, (5) repeatedly told, against his belief, that he was no longer represented by a retained counsel, and (6) questioned after his repeated requests for retained counsel, would have believed that he was in custody. Even accounting for the generally coercive nature of station-house questioning, *see Mathiason*, 429 U.S. at 495, Reyna, Arreola, and the third deputy's actions went beyond the pale of a non-custodial encounter because they effectively deprived Vasquez of his "freedom" to contact his retained counsel. The Seventh Circuit has noted that:

10

in the context of a prolonged detention where there is persistent, accusatory questioning by several officers, the fact that the police observed certain formalities of a custodial arrest[—such as *Mirandizing* a suspect—] without actually telling the [the suspect] that he was under arrest does provide some support for an inference that [the suspect] was in custody for the purposes of *Miranda*.

*Sprosty*, 79 F.3d at 642. Based upon the totality of the circumstances, and giving "almost total deference" to the trial court's findings of historical fact, *see Guzman*, 955 S.W.2d at 89, we hold that the trial court did not err by implicitly finding that Vasquez was subjected to a custodial interrogation. The State's second issue is overruled.[2]

### III. ASSERTION OF RIGHT TO COUNSEL

In its first issue, the State contends that the trial court erred by finding that, because Vasquez was not allowed to consult with his counsel before being questioned, Vasquez's statement should be suppressed. The State cites *Edwards v. Arizona*, 451 U.S. 477, 486 (1981) as the governing authority for its first issue. In *Edwards*, a suspect was given *Miranda* warnings and questioned by police until he requested counsel. *Id*. at 479. The interview then ceased, and the suspect was booked into jail. *Id*. The next day, police visited the suspect in jail, asked to speak to him, re-*Mirandized* him, and obtained a confession. *Id*. In holding that the suspect's confession should have been suppressed, the Court wrote that "it is inconsistent with *Miranda* and its progeny for the authorities, at

---

[2] The State contends that our decision in *Zavala v. State*, 956 S.W.2d 715, 725 (Tex. App.–Corpus Christi 1997, no pet.) dictates reversal. In *Zavala*, the appellant was convicted of capital murder, and on appeal, she challenged the trial court's denial of her motion to suppress several statements, including two pre-arrest statements, on the ground that her termination of the initial interview was an exercise of her Fifth Amendment right to remain silent on all subsequent interviews. *Id.* at 722-23. We held that, "[b]ecause appellant was questioned with her consent, and was not a suspect initially, the police were not obligated to give her *Miranda* warnings, and therefore her expression of her desire to terminate the interview [during the initial interview] was not an invocation of a Fifth Amendment right which thereby obligated police to cease any questioning." *Id*. at 725. This case is distinguishable because Vasquez requested counsel during a custodial interrogation and relented, by executing the 2005 statement, only after repeated questions. The appellant in *Zavala* neither requested nor was denied the right to speak to an attorney during a custodial interrogation. *See id*.

their [insistence], to reinterrogate an accused in custody if he had clearly asserted his right to counsel." *Id*. at 485. The State contends that the protections afforded by *Edwards* somehow expired because the "re-interview" occurred four years after Vasquez's initial request for counsel. Putting the State's expiration argument aside, this case is distinguishable from *Edwards* because the suspect in that case did not request counsel at the re-interrogation, as Vasquez did. Thus, *Miranda*, rather than *Edwards*, is the appropriate Fifth Amendment authority to use in this case.

*Miranda* dictates that the assertion of the right to counsel is a significant event and that once exercised by the accused, "the interrogation must cease until an attorney is present." 384 U.S. at 474. In overruling the State's second issue, we have already held that Vasquez was subjected to a custodial interrogation. Thus, the deputies' questioning after Vasquez's insistence on his attorney violated *Miranda*. The State's second issue is overruled.

**IV. CONCLUSION**

The trial court's suppression order is affirmed.

_____
ROGELIO VALDEZ
Chief Justice

Publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed
the 10th day of December, 2009.

12