**F I L E D**
IN THE 13TH COURT OF APPEALS
CORPUS CHRISTI

8/26/15

**DORIAN E. RAMIREZ, CLERK**
**BY** Delia S. Rodriguez

ACCEPTED
13-14-00530-cr
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
8/26/2015 3:38:52 PM
CECILE FOY GSANGER
CLERK

NO. 13-14-00530-CR

IN THE

COURT OF APPEALS FOR THE

THIRTEENTH SUPREME JUDICIAL DISTRICT

CORPUS CHRISTI, TEXAS

RECEIVED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
8/26/2015 3:38:52 PM
CECILE FOY GSANGER
Clerk

_____

ROBERTO CARDENAS GARZA

VS.

THE STATE OF TEXAS

_____

ON APPEAL FROM THE

206th JUDICIAL DISTRICT COURT

EDINBURG, HIDLAGO COUNTY, TEXAS

IN CAUSE NO. CR-4064-11-D

_____

# APPELLANT'S AMENDED BRIEF

_____

ALFREDO MORALES, JR.
ATTORNEY AT LAW
P.O. BOX 52942
MCALLEN, TX  78505
(956) 536-8800 TEL
(956) 381-4269 FAX
EMAIL: amjr700@gmail.com
APPELLANT'S COUNSEL

ORAL ARGUMENT WAIVED

IDENTITY OF PARTIES AND COUNSEL

The undersigned counsel of record certifies that the persons listed below have an interest in the outcome of this case.  This representation is made so that the judges of this court may properly evaluate said information to determine whether there exists any reason requiring his/her disqualification or recusal from the case at bar.

A.  Parties

    Appellant:                Roberto Cardenas Garza

    Appellee:                 State of Texas

B.  Counsel at Trial

    For Appellant:            Rogelio Garza
                                 Attorney at Law
                                 310 W. University
                                 Edinburg, TX  78539

    For Appellee:             Joaquin Zamora, ADA
                                 Hidalgo County Dist. Atty.
                                 100 N. Closner
                                 Edinburg, TX  78539

C.  Counsel on Appeal

    For Appellant:            Alfredo Morales, Jr.
                                   P.O. Box 52942
                                 McAllen, TX  78505

    For Appellee:             Ted Hake, ADA
                                   Hidalgo County Dist. Atty.
                                 100 N. Closner
                                 Edinburg, TX  78539

TABLE OF CONTENTS

IDENTITIES OF PARTIES AND COUNSEL . . . . . . . . . . . i

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . ii

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . iii - vi

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . 1

APPELLANT'S POINTS OF ERROR . . . . . . . . . . . . . 1 - 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . 2 - 3

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . 3

ARGUMENT UNDER POINT OF ERROR NUMBER ONE . . . . . . 4 - 11

ARGUMENT UNDER POINT OF ERROR NUMBER TWO . . . . . 12 - 25

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . 25

PRAYER . . . . . . . . . . . . . . . . . . . . . . . 26

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . 27

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . 27

INDEX OF AUTHORITIES

CONSTITUTIONS

United States Constitution

5th Amendment . . . . . . . . . . . . . . 4, 5, 8, 11

6th Amendment . . . . . . . . . . . . . . . . 10

STATUTES

Texas Penal Code

Section 6.03(a) . . . . . . . . . . . . . . . 14

Section 6.03(b) . . . . . . . . . . . . . . . 14

Section 7.02 . . . . . . . . . . . . . . . . 20

Section 19.03(a)(2) . . . . . . . . . . . . . 14

CASES

United States Supreme Court

Arizona v. Robinson, 108 S.Ct. 2093 (1988) . . . . 10

Davis v. U.S., 114 S.Ct. 2350 (1994) . . . . . . . 11

Edwards v. Arizona, 101 S.Ct. 1880 (1981) . . . 9, 11

Jackson v. Virginia, 116 S.Ct. 717 (1996) . . . . 12

Miranda v. Arizona, 86 S.Ct. 1602 (1964) . . . . . 8

Rhode Island v. Innis, 100 S.Ct. 1682 (1980) . . . 10

Stansbury v. California, 114 S.Ct. 1526 (1994) . . 8

Texas Court of Criminal Appeals

Adames v. State, 353 S.W.3d 854 (Tex. Crim. App. 2011) . . . . . . . . . . . . . . . . . . . . . 21

Brooks v. State, 323 S.W.3d 895 (Tex. Crim. App. 2010) . . . . . . . . . . . . . . . . . . . . . . . . 12

Burden v. State, 55 S.W.3d 608 (Tex. Crim. App. 2001) . . . . . . . . . . . . . . . . . . . . . . . . 12

Denton v. State, 911 S.W.2d 388 (Tex. Crim. App. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . 12

Dohitt v. State, 931 S.W.2d 244 (Tex. Crim. App. 1996) . . . . . . . . . . . . . . . . . . . . . . . . 8

Fuentes v. State, 991 S.W.2d 267 (Tex. Crim. App. 1999) . . . . . . . . . . . . . . . . . . . . . . . 13

Gross v. State, 380 S.W.3d 181 (Tex. Crim. App. 2012) . . . . . . . . . . . . . . . . . . . . . . 20, 21

Haggins v. State, 785 S.W.2d 827 (Tex. Crim. App. 1990) . . . . . . . . . . . . . . . . . . . . . . . 15

Herrin v. State, 125 S.W.3d 436 (Tex. Crim. App. 2002) . . . . . . . . . . . . . . . . . . . . . . . 24

Janenka v. State, 739 S.W.2d 813 (Tex. Crim. App. 1987) . . . . . . . . . . . . . . . . . . . . . . . 9

Johnson v. State, 68 S.W.3d 644 (Tex. Crim. App. 2002) . . . . . . . . . . . . . . . . . . . . . . . 5

Johnson v. State, 414 S.W.3d 184 (Tex. Crim. App. 2013) . . . . . . . . . . . . . . . . . . . . . . . 8

Montanez v. State, 195 S.W.3d 101 (Tex. Crim. App. 2006) . . . . . . . . . . . . . . . . . . . . . . . 5

Montelongo v. State, 681 S.W.2d 47 (Tex. Crim. App. 1984) . . . . . . . . . . . . . . . . . . . . . . . 9

Malik v. State, 953 S.W.2d 234 (Tex. Crim. App. 1997) . . . . . . . . . . . . . . . . . . . . . . 13

McDuff v. State, 939 S.W.2d 607 (Tex. Crim. App. 1997) . . . . . . . . . . . . . . . . . . . . . . 13

iv

Patrick v. State, 906 S.w.2d 248 (Tex. Crim. App. 1995). . . . . . . . . . . . . . . . . . . 14, 16

Pecina v. State, 361 S.W.3d 68 (Tex. Crim. App. 2012) . . . . . . . . . . . . . . . . . . . 11

Rodriguez v. State, 146 S.W.3d 674 (Tex. Crim. App. 2004) . . . . . . . . . . . . . . . . . . . 14

Salazar v. State, 86 S.W.3d 640 (Tex. Crim. App. 2002) . . . . . . . . . . . . . . . . . . . 16

State v. Ortiz, 382 S.W.3d 367 (Tex. Crim. App. 2012) . . . . . . . . . . . . . . . . . . . 5

Turner v. State, 805 S.W.2d 423 (Tex. Crim. App. 1991) . . . . . . . . . . . . . . . . . . . 14

Turro v. State, 867 S.W.2d 43 (Tex. Crim. App. 1993) . . . . . . . . . . . . . . . . . . . 13

Villarreal v. State, 935 S.W.2d 134 (Tex. Crim. App. 1996) . . . . . . . . . . . . . . . . . . . 6

Texas Courts of Appeals

Delgado v. State, 840 S.W.2d 594 (Tex. App. – Corpus Christi 1992) . . . . . . . . . . . . . . 16

Erivin v. State, 333 S.W.3d 151 (Tex. App. – Houston [1st Dist.] 2010) . . . . . . . . . . . . . . 21, 24

Martinez v. State, 645 S.W.2d 322 (Tex. App. – Corpus Christi 1982) . . . . . . . . . . . . . . . . . 11

Montgomery v. State, 198 S.W.3d 67 (Tex. App. – Ft. Worth 2006) . . . . . . . . . . . . . . . . . 16

Murray v. State, 24 S.W.3d 881 (Tex. App. – Waco 2000) . . . . . . . . . . . . . . . . . . . 13

State v. Vasquez, 305 S.W.3d 289 (Tex. App. – Corpus Christi 2009) . . . . . . . . . . . . . . . . 11

Wooden v. State, 101 S.W.3d 542 (Tex. App. – Ft. Worth 2003) . . . . . . . . . . . . . . . . . . 24

STATEMENT OF THE CASE

Appellant Roberto Cardenas Garza was charged by indictment with the offense of capital murder. More specifically, the State alleged at trial that Appellant, on or about August 15, 2011, did then and there intentionally and knowingly cause the death of David Alejandro Martinez by shooting him with a firearm while in the course of committing, or attempting to commit, the offense of kidnapping. (RR. Vol. 31, p. 16). The Appellant entered a not guilty plea to the charge before the jury at his formal arraignment. (RR. Vol. 31, p. 16, ln. 21). The State did not seek the death penalty.

After the State presented its evidence, the jury found Appellant guilty of the offense of capital murder as charged in the indictment, (RR. Vol. 33, p. 58), and the trial court then imposed an automatic life sentence, without parole, in accordance with the law. (RR. Vol. 33, p. 63).

Appellant then timely filed his notice of appeal with the trial court.

APPELLANT'S POINTS OF ERROR

APPELLANT'S POINT OF ERROR ONE:

The trial court abused its discretion in failing

1

to grant the Appellant's pre-trial motion to suppress the statements made to the police.

APPELLANT'S POINT OF ERROR NUMBER TWO:

The evidence introduced at the Appellant's trial was legally insufficient to support the jury's guilty verdict for the offense capital murder.

## STATEMENT OF FACTS

The evidence presented at trial showed that, late in the afternoon of August 17, 2011, police responded to a call of a body found in an open filed at a remote location in western Hidalgo County, Texas. Based on the evidence found at the scene and the advanced decomposition state of the body, the police immediately suspected foul play. The initial investigation developed several potential suspects and "persons of interest," including the Appellant.

Days later, as police officers executed a search warrant at Appellant's house for possible evidence relating to the body discovered in the open field, Appellant approached his house from the adjacent roadway. However, alarmed by the number of officers and police units at his house, he did not stop. Not knowing what to do, he immediately contacted his lawyer (who was representing him

2

in an unrelated drug case) and asked for his advice. His lawyer, believing the presence of police was related to his pending drug case, advised him to stop and return to the residence.

Appellant promptly returned to his residence, but was not allowed to go into his home. He was then detained, without a warrant, and taken to the Hidalgo County Sheriff's Department, where police interrogated him for over 20 hours, resulting in three separate statements in which he ultimately admitted to being present when David Martinez, the person later identified to be the body found in the open field, was killed. (RR. Vols. 31 – 32).

## SUMMARY OF THE ARGUMENT

The Appellant contends that the trial court abused its discretion when it denied his motion to suppress all three statements on the ground that his 5th Amendment right to counsel was violated.

Without waiving the foregoing argument, the Appellant further alleges that the evidence introduced at his trial on the merits was legally insufficient to prove all of the elements of the offense of capital murder beyond a reasonable doubt.

APPELLANT'S POINT OF ERROR NUMBER ONE

THE TRIAL COURT ERRED IN FAILING TO SUPPRESS ALL
THREE OF APPELLANT'S CONFESSIONS ON THE GROUND THAT HIS
FIFTH AMENDMENT RIGHT TO COUNSEL WAS VIOLATED.

As stated earlier, upon arriving at his house while police executed a search warrant on the premises, Appellant was stopped, denied entry into his house, detained without a warrant, and transported to the Hidalgo County Sheriff's Office in an unmarked police unit. There he remained, incommunicado, for over 20 hours of continuous, repeated interrogation by three investigators who took turns and questioned him at different times. And, while Appellant made a request to speak to his previously-retained lawyer, the investigators denied his request, insisting he did not a lawyer. Eventually, under the pressure of incessant interrogation, Appellant gave three statements confirming his presence at the murder scene. (RR. Vol. 20; See also, Supplemental RR. Vol. 1, Exhibits A – E).

The Appellant filed a pre-trial motion to suppress, which the trial court denied after an evidentiary hearing.

The Appellant contends the trial court erred in not suppressing his three written statements because the investigators violated his 5th Amendment right to counsel.

4

A trial court's ruling of a suppression motion is reviewed under an abuse of discretion standard. In reviewing is factual and legal determinations in a suppression hearing, the appeals court conducts a bifurcated review. Montanez v. State, 195 S.W.3d 101 (Tex. Crim. App. 2006). Under this standard, almost total deference is given to the trial court's factual determination, particularly on those questions and issues that deal with the credibility of the witnesses. However, the appeals court reviews de novo the trial court's ruling on mixed questions of law and fact which do not turn on the credibility or demeanor of the witnesses, Johnson v. State, 68 S.W.3d 644 (Tex. Crim. App. 2002), and those determinations that present purely "legal rulings." State v. Ortiz, 382 S.W.3d 367 (Tex. Crim. App. 2012). Thus, while affording almost total deference to the findings of fact, the court reviews de novo the conclusions of law to determine if the trial court abused its discretion in denying the suppression motion and admitting the confession. Montanez, supra. Of course, a trial court's ruling on a suppression motion must be upheld if it is reasonably supported by the record and is correct on any legal theory of law applicable to the case. Villarreal v.

5

State, 935 S.W.2d 134 (Tex. Crim. App. 1996).

At the suppression hearing, Appellant testified that, having previously spoken to his lawyer (Eddie Medrano), whom he had already retained in another pending case, over the cell phone while being detained at his house, he requested to speak to him upon being advised of his Miranda rights at the Sheriff's Office. The investigators, however, insisted that a lawyer was unnecessary, and declined his request.

Quite telling was the fact that, in indicating that he understood his constitutional rights, he initialed all of the Miranda warnings and waivers, with the exception of the right to consult with a lawyer, a clear indication that he was not waiving that particular right, and lending further support to his contention that he never waived his right to counsel, and had in fact asserted his right to speak to his retained lawyer. (Vol. 20, pp. 109 – 120).

Each investigator testified that Appellant went to the station voluntarily, that he was Mirandized prior to the taking of each statement, that he understood his constitutional rights, that he never requested to speak to a lawyer, and that he voluntarily gave them the statements. One investigator (Hernan Perez) did acknowledge that

6

Appellant had initialed only four of the five warnings / waivers. (Herman Perez, RR. Vol. 20, pp. 6 – 36; Max Cantu, RR. Vol. 20, pp. 37 – 75; Vic De Leon, RR. Vol. 20, pp. 75 – 93).

Appellant's lawyer, Heriberto "Eddie" Medrano, testified that he spoke to Appellant on his cell phone while on his way to a court hearing in San Antonio, that Appellant told him he police were at his house, and that he was being detained.  Believing that he was being detained for a pending drug case for which he was representing Appellant, he advised him to contact him once he got to the Sheriff's Office.  Mr. Medrano further testified that on his return from his court hearing, he and another lawyer (Rudy Martinez) had stopped at the Sheriff's Office to speak to Appellant.  Once there, he identified himself as Appellant's lawyer and requested to visit with Appellant, but that an investigator, whom he identified as Max Cantu, had told him Appellant did not want to talk to him (Medrano).  (RR. Vol. 20, pp. 95 – 104).

Attorney Rudy Martinez confirmed the conversation between Medrano and Cantu.  (RR. Vol. 20, pp. 105 – 109).

Investigator Cantu testified that he did not recall speaking to Appellant's lawyer, but indicated that it was

7

"possible." Nonetheless, he claimed that, even if he had had such a conversation with the lawyer, he opined that a lawyer could not invoke the 5th Amendment right to counsel on behalf of a client. (RR. Vol. 20, pp. 63 – 65).

The question of whether the Appellant was detained, seized, and in custody is subject to a de novo review by the appeals court. Johnson v. State, 414 S.W.3d 184 (Tex. Crim. App. 2013).

In the case at bar, there is no question that Appellant was in custody for purpose of the Miranda rule. Miranda v. Arizona, 86 S.Ct. 1602 (1964). Given the facts and circumstances surrounding his warrantless detention at his house and his subsequent transportation to the Sheriff's Office, in a police unit, by a criminal investigator, it is clear that, a reasonable person in his position would have believed that his freedom of movement was restrained to the degree associated with a formal arrest. Stansbury v. California, 114 S.Ct. 1526 (1994). Therefore, the subjective views of the investigators in this case – all of whom attempted to characterize his leaving with them as "voluntary," since he was neither handcuffed or under formal arrest – are immaterial. See, Dothitt v. State, 931 S.W.2d 244 (Tex. Crim. App. 1996).

8

Accordingly, Miranda was applicable and, once he requested to speak to his retained lawyer, and all interrogations should have ceased. Edwards v. Arizona, 101 S.Ct. 1880 (1981). Because the interrogations continued and the investigators ultimately obtained the Appellant's statements, all three statements should have been suppressed as they were a direct product of the violation of Appellant's constitutional right to a lawyer.

Moreover, Investigator Cantu's observation that the right to counsel cannot be invoked by a lawyer on behalf of his client, is generally speaking accurate, Montelongo v. State, 681 S.W.2d 47 (Tex. Crim. App. 1984), he clearly misapplied the rule in the case at bar, and totally mischaracterized the Appellant's lawyer's presence at the Sheriff's Office. Contrary to Cantu's assertion, Mr. Medrano was not there to invoke the Appellant's right to counsel, because Appellant had already done so; rather, he was there to confirm an already existing attorney-client relationship, Janeka v. State, 739 S.W.2d 813 (Tex. Crim. App. 1987), and to exercise his right to visit with, and speak to, his client. In fact, he had talked to Appellant over the cell phone just hours earlier while police were executing a search warrant on the house. That

9

Mr. Medrano was representing Appellant in an unrelated drug case is neither controlling or relevant for purposes of the legal analysis under Miranda. He was the Appellant's lawyer and he was there to protect his client's interests.

More importantly, in this particular context, the Miranda 5th Amendment right to counsel, unlike the 6th Amendment right to counsel, is not offense specific. Arizona v. Roberson, 108 S.Ct. 2093 (1988), and Mr. Medrano could have talked to Appellant in his capacity as his current lawyer, even though he had not been retained for the offense for which Appellant was being questioned.

The investigators knew, from the outset, that their express questioning was reasonably likely to elicit incriminating responses. Rhode Island v. Innis, 100 S.Ct. 1682 (1980). At the suppression hearing – and even at trial – the investigators unabashedly admitted that their purpose in taking him to the station was to secure a confession from the Appellant.

Appellant invoked his right to counsel, yet they ignored his request, and continued with their questioning. That Appellant then continued to cooperate and talk with the investigators, even after invoking his right to counsel, is of no moment and cannot be construed as a

10

waiver of his right to a lawyer. Edwards v. Arizona, supra; Martinez v. State, 645 S.W.2d 322 (Tex. App. – Corpus Christi 1982).

The facts established that Appellant invoked his right to counsel under Miranda. His lawyer did not show up at the station out of an act of benevolence or clairvoyance. He was there because of an already existing attorney-client relationship, and he wanted to consult with his client.

Reviewing the testimony objectively and under the totality of circumstances present in the case, Davis v. U.S., 114 S.Ct. 2350 (1994); Pecina v. State, 361 S.W.3d 68 (Tex. Crim. App. 2012), the evidence demonstrates that the Appellant invoked his 5th Amendment right to counsel.

Accordingly, because the statements obtained by the police were a direct and immediate consequence of a relentless interrogation conducted in violation of his Miranda's right to counsel, all three of Appellant's statements should have been suppressed and excluded at his jury trial.

The trial court abused its discretion in failing to grant the Appellant's motion to suppress his statements. Martinez v. State, supra; State v. Vasquez, 305 S.W.3d 289 (Tex. App. – Corpus Christi 2009).

11

APPELLANT'S POINT OF ERROR NUMBER TWO

THE EVIDENCE ADDUCED AT APPELLANT'S TRIAL WAS LEGALLY INSUFFICIENT TO SUPPORT THE JURY'S GUILTY VERDICT FOR THE OFFENSE OF CAPITAL MURDER

Appellant contends that the evidence presented for the jury's consideration at his trial was legally insufficient and failed to prove beyond a reasonable doubt that he intentionally and knowingly caused the death of David Alejandro Martinez.

In reviewing the legal sufficiency of the evidence, the appeals court examines all of the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 116 S.Ct. 717 (1996); Denton v. State, 911 S.W.2d 388 (Tex. Crim. App. 1995). The Texas Court of Criminal Appeals has determined that the legal sufficiency review is the only standard that an appellate court must undertake to ascertain whether the evidence is sufficient to support each element that the State is required to prove to the jury. Brooks v. State, 323 S.W.3d 895 (Tex. Crim. App. 2010). This standard is the same for both direct and circumstantial cases. Burden v. State, 55 S.W.2d 608 (Tex. Crim. App. 2001). Guided by this standards, the evidence

is measured by the elements of the offense as defined by a hypothetically correct charge for the case, Malik v. State, 953 S.W.2d 234 (Tex. Crim. App. 1997), and the appeals court considers all the evidence adduced at trial, regardless of whether or not it was properly admitted. Murray v. State, 24 S.W.3d 881 (Tex. App. – Waco 2000). The jury, as the trier of fact, is the sole judge of the credibility of the witnesses and of the strength of the evidence, and it may choose to believe or disbelieve any portion of the witnesses' testimony.  Fuentes v. State, 991 S.W.2d 267 (Tex. Crim. App. 1999).  When faced with conflicting evidence, the appeals court presumes the jury resolved conflicts in favor of the prevailing party.  Turro v. State, 867 S.W.2d 43 (Tex. Crim. App. 1993).  Moreover, the appeals court must affirm the verdict if it determines that, based on the evidence presented, any rational trier of fact could have found all the essential elements of the charged crime beyond a reasonable doubt. McDuff v. State, 939 S.W.2d 607 (Tex. Crim. App.1997).

In the case at bar, in order to prevail under the foregoing legal standard, the State had to prove beyond a reasonable doubt that the Appellant, on the alleged date, intentionally and knowingly caused the death of another in

13

the course of committing a kidnapping.  Tex. Pen. Code,
Sect. 19.03(a)(2).  Under the law, a person acts
"intentionally," or with intent, with respect to the
nature of his conduct or to a result of his conduct when it
is his conscious objective or desire to engage in the
conduct or cause the result, Tex. Pen. Code, Sect. 6.03(a),
and acts "knowingly," or with knowledge, with respect to
the nature of his conduct or to circumstances surrounding
his conduct when he is aware of the nature of his conduct
or that the circumstances exist.  A person acts knowing, or
with knowledge, with respect to a result of his conduct
when he is aware that his conduct is reasonably certain to
cause the result.  Tex. Pen. Code, Sect. 6.03(b).

Additionally, in a capital murder case, the State must
prove that the accused committed the underlying aggravating
crime (in this instance, kidnapping), Patrick v. State, 906
S.W.2d 2481 (Tex. Crim. App. 1995); Rodriguez v. State, 146
S.W.3d 674 (Tex. Crim. App. 2004), and prove that the
accused, not only intended to engage in the act that
caused the death, but also that he had the specific intent
to cause the death of the individual.  Turner v. State, 805
S.W.2d 423 (Tex. Crim. App. 1991).

Given the statutory definitions, it is clear that the

14

mental state criminalized is the state of mind that contemplates the particular prohibited result. See, Haggins v. State, 785 S.W.2d 827 (Tex. Crim. App. 1990). In this particular case, then, the State had to prove, beyond a reasonable doubt, that Appellant intentionally or knowingly caused the kidnapping and death of David Alejandro Martinez.

As the record on appeal demonstrates, the State's witness testimony, together physical and forensic evidence introduced at trial, failed to establish beyond a reasonable doubt that Appellant intentionally or knowingly – and with the requisite specific intent – killed David Martinez.

Before addressing the legal insufficiency of the evidence, and without waiving his first point of error (but assuming, arguendo, that the court overrules it), the Appellant readily acknowledges that he gave three detailed statements to the police regarding the events leading up to that fateful day. However, it is well settled law that a person may not be convicted upon his extrajudicial confession alone; rather, the State must establish all the elements of the crime for which he is charged totally independent of the confession. In short,

15

there must be sufficient, independent evidence tending to corroborate the facts contained in the confession.  Salazar v. State, 86 S.W.3d 640 (Tex. Crim. App. 2002); Delgado v. State, 840 S.W.2d 594 (Tex. App. – Corpus Christi 1992).

The evidence in the case at bar, contrary to the assertion of the State at trial, corroborates the Appellant's statements that he did not harbor the specific intent to kill Martinez, as alleged in the indictment.

Appellant openly admits to putting the zip ties on Martinez - but only at the insistence (and under the direction) of - "Pepe," and accompanying them (as a passenger in Pepe's truck) to a couple of houses where Martinez claimed the others responsible for stealing the Marijuana lived, and then to the open filed where Martinez was ultimately murdered.  However, none of those acts rose to the level of having engaged in the intentional and knowing conduct contemplated by the statute.  Proof of a culpable mental state invariably depends upon circumstantial evidence, Montgomery v. State, 198 S.W.3d 67 (Tex. App. – Ft. Worth 2006), and intent can be inferred from the facts and circumstances regarding the event in question.  Patrick v. State, Id, supra.

However, a close examination of the Appellant's

16

statements does not show that, by engaging in the conduct in which he admits doing, it was "his conscious objective or desire to engage in the conduct or cause the result," or that "he (was) aware that his conduct (was) reasonably certain to cause the result." In other words, by having placed the zip ties on Martinez and then riding as a passenger in the pickup truck driven by Pepe to the homes of Martinez's alleged cohorts and finally to the remote area, it was not Appellant's "conscious objective or desire" to cause Martinez's death; or, that, even by having engaged in such conduct, he had the specific intent to cause his death.

The evidence introduced at trial in this case, when coupled with the Appellant's statements to the police, clearly supports his contention that he did not engage in any act or course of conduct – with the requisite intent or knowledge as contemplated by the capital murder statute – to kidnap and kill Martinez.

The testimonial, physical, scientific and forensic evidence was scant and did not support the State's theory that Appellant intentionally and knowingly murdered Martinez, either as a principal or party.

More specifically, neither the witness testimony nor

17

any of the forensic evidence introduced before the jury established, beyond a reasonable doubt, that the Appellant killed Martinez in the course of committing, or attempting to commit, his kidnapping.

The crime scene specialists and evidence technicians collected a number of items, both at the crime scene and the Appellant's home, mechanic shop, and vehicles. However, none of the items recovered – shotgun shell, casing, zip ties, tire tracks, and empty gun holsters – was connected to the Appellant or to the murder. In fact, the witnesses made clear that the evidence recovered could not be in any way specifically attributed to the Appellant or directly tie him to the murder. (RR. Vol. 31, pp. 27 – 217). Additionally, the State's firearms expert unequivocally testified that neither the casing nor cartridges he examined matched the one found at the crime scene, and that the weapon recovered by police, and which he test-fired, was definitely not the murder weapon. (RR. Vol. 31, pp. 39 – 56).

Even the State's key witness, Jose Francisco Rodriguez, who was the person the investigation determined actually picked up Martinez and drove him over to, and dropped him off with, the perpetrators at the mechanic

18

shop failed to identify in open court – by name or physical description – the Appellant.  In fact, when specifically asked by the State on direct examination if the person(s) who had requested that he (Rodriguez) take Martinez to the shop were present in the courtroom, he neither identified or acknowledged the Appellant.  (RR. Vol. 31, pp. 250 – 251).

The State's entire case was predicated exclusively on the Appellant's three statements given to the investigators. (RR. Vol. 32`, pp. 56 – 276)(See also, SX 148, SX 149, and SX 151).  There was a total absence of physical, testimonial, or forensic evidence to tie the Appellant to the capital murder of Martinez.

In fact, when Appellant's counsel pointedly asked Vic De Leon, the main investigator in the case, what evidence he had that Appellant had actively participated in Martinez's kidnapping and murder, he candidly stated that there was nothing "other than what Robert (Appellant) was telling me."  (RR. Vol. 32, p. 269, line 20).  He also reiterated that none of the physical or forensic evidence found at the crime scene and at the Appellant's home, mechanic shop, and vehicles connected, or even implicated, him in the kidnapping / murder of Martinez.  (RR. Vol. 32,

19

pp. 250 – 256). When further pressed about the basis for the issuance of the arrest warrant, Investigator De Leon, again, stated without hesitation or reservation, that it was "his (Appellant's) confession." (RR. Vol. 32, p. 259).

Although the Appellant was charged as a principal with Martinez's death, the case also was submitted to the jury under the law of parties. Sect. 7.02, Texas Penal Code.

Nonetheless, the State was unable to prove Appellant's guilt under either theory.

Certainly, there was legally insufficient evidence to establish, beyond a reasonable doubt, that Appellant, alone, acting as a principal, kidnapped and murdered Martinez. So too, the State had legally insufficient evidence to make Appellant criminally responsible for Martinez's death under the law of parties. There was no evidence to show that, acting with the intent to assist the commission of the crime, the Appellant solicited, encouraged, directed or aided Pepe to commit the kidnapping and murder involved here.

In order to hold Appellant criminally responsible under the law of parties for the capital murder, the State had to provide some evidence of a common scheme or understanding to commit the crime. Gross v. State, 380

20

S.W.3d 181 (Tex. Crim. App. 2012).

While unquestionably the Appellant placed himself at the scene of the crime by virtue of his statements to the police, mere presence at the crime scene will not be sufficient to convict a person of a crime under the law of parties. In order to hold a person responsible for the conduct of another, the evidence must show that, at the time of the offense, the parties were acting together in concert for a common purpose, with each contributing some part towards the execution of the crime – here, the kidnapping and murder of Martinez.

For example, in Adames v. State, 353 S.W.3d 854 (Tex. Crim. App. 2011), the Appellant was found guilty of capital murder under the law of parties. In that case, however, the Appellant actively participated in the kidnapping and murder of the victim. He knew, at the time he was told to inject the victim with heroin, that it was for the specific purpose of causing her death. Then, with full knowledge of of her impending death, Appellant, along with the other co-defendants, placed her in a vehicle, drove her to a remote area, and dumped her body.

Similarly, in Ervin v. State, 333 S.W.3d 187 (Tex. App. – Houston [1st Dist.] 2010), the jury likewise found

21

the Appellant guilty of capital murder.  But, again, like the Appellant in Adames, supra, Appellant actively participated with her co-defendants, from beginning to end. The Appellant, with full appreciation and knowledge that her co-conspirators were going to rob and kill the victim, she drove them to the carwash where the victim was located. There, she dropped them off as they stepped out with loaded weapons and donned masks and hoodies to conceal their identities. She waited down the street while they committed the crime.  Upon hearing the gunshots, she then drove to the carwash, pick them up, and took them over to one of the co-conspirator's house.

As can be gleaned from these cases, and other authorities cited therein, the level of participation and knowledge required for a conviction under the law of parties is one of an active, knowing, engaging, and ongoing role, a far cry from the one involved in this particular case.

The facts in this particular instance did not involve the requisite knowledge or participation to hold Appellant criminally responsible for Martinez's death under the law of parties.

While placing the zip ties around Martinez's hands

22

restrained his hands, it by no means restrained his movements. Unlike the facts in Adames, supra, where the Appellant injected the victim with heroin with the intent to kill her, it was clear, from the surrounding circumstances, that the reason Pepe wanted Martinez's hands immobilized was to prevent Martinez from engaging in a physical confrontation with him, since as soon as Appellant put on the ties, Pepe began beating Martinez.

It is inconceivable that Appellant could have reasonably anticipated that Pepe would then kidnap Martinez.

As the events were unfolding, the Appellant's reasonable belief for the purpose of taking Martinez for a ride in the truck was so that he could tell Pepe where Paco and the other man (both of whom had helped him steal the marijuana) lived. It was not until Pepe drove to a remote, grassy area that he then realized Pepe was not content with just finding out where the men lived; he wanted to kill Martinez.

Appellant never actively participated, encouraged, aided, or abetted Pepe in any way to either kidnap and murder Martinez. Concededly, while he was present during the entire encounter between Pepe and Martinez, his

23

presence was without full appreciation of what Pepe was contemplating on doing to Martinez.

Unlike the cited cases, then, the evidence introduced at Appellant's trial failed to establish that Appellant encouraged the commission of the offense by acts, words, or agreement. Wooden v. State, 101 S.W.3d 542 (Tex. App. – Ft. Worth 2003); Ervin v. State, 333 S.W.3d 151 (Tex. App. – Houston [1st Dist.] 2010).

A rational jury could not have determined from the state of the evidence that the Appellant, acting with the intent to promote or assist Pepe, either solicited, encouraged, directed, aided or abetted him in committing the murder while in the course of committing the offense of kidnapping. Herrin v. State, 125 S.W.3d 436 (Tex. Crim. App. 2002).

The testimonial facts adduced at trial, together with the corresponding forensic and physical evidence collected at the crime scene, and Appellant's home, business, and vehicles, including the Appellant's statements, failed to establish, beyond a reasonable doubt that Appellant intentionally or knowingly – and with the requisite specific intent – caused the death of David Martinez, either as a principal or party.

24

Accordingly, examining all of the pertinent evidence in the light most favorable to the verdict, it is evidently clear that no rational trier of fact could have found all of the essential elements of the offense of capital murder beyond a reasonable doubt.

Therefore, the Appellant requests that the court sustain this point of error, and reverse the jury verdict in this cause with respect to the charge of the capital murder.

CONCLUSION

Appellant demonstrated that he invoked his right to counsel prior to being questioned by the investigators, and that all three statements were obtained in violation of his right to counsel. In that regard, then, the trial court abused its discretion in failing to grant Appellant's pre-t trial motion to suppress.

Additionally, Appellant has established that the evidence adduced at his trial was legally insufficient to support the jury's guilty verdict for the offense of capital murder, because the State failed to prove that Appellant intentionally, knowingly, and with the specific intent, caused the death of Martinez in the course of committing his kidnapping.

25

PRAYER

Therefore, in light of the foregoing facts, arguments, and legal authorities, the Appellant respectfully requests that the court reverse the jury's guilty verdict and remand the case for a new trial if it sustains Point of Error Number One. Alternatively, and without waiving the foregoing arguments in Point of Error Number One, if the court sustains Point of Error Number Two, then the Appellant requests that the court vacate the jury's guilty Verdict, enter a judgment of acquittal, and discharge the Appellant.

Respectfully Submitted,

Alfredo Morales, Jr.
Attorney at Law
P. O. Box 52942
McAllen, TX  78505
(956) 536-8800 TEL
(956) 381-4269 FAX
EMAIL: amjr700@gmail.com


/S/ Alfredo Morales, Jr.
_____
 ALFREDO MORALES, JR.
STATE BAR NO. 14417290

26

CERTIFICATE OF SERVICE

I, Alfredo Morales, Jr., hereby certify that a true
and correct copy of the foregoing Appellant's Brief was
hand-delivered to the Hon. Glenn Devino, ADA, appellate
counsel for the State, at the Hidalgo County Courthouse,
100 N. Closner, Edinburg, TX  78539, on this the 26th day
Of August, 2015.

/S/ Alfredo Morales, Jr.
_____
ALFREDO MORALES, JR.


CERTIFICATE OF COMPLIANCE

In accordance with Rule 9.4(i)(3) of the Amended Rules
of Appellate Procedure, I, Alfredo Morales, Jr., counsel of
record for Appellant, hereby certify that, relying on the
word count of the computer program used to prepare
Appellant's Brief herein, the brief contains 6,807 words.

/S/ Alfredo Morales, Jr.
_____
ALFREDO MORALES, JR.

27